UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAMUEL JEWLER,                          )
3266 Worthington St., NW,               )
Washington, DC 20015,                   )          Case No. 1:12-cv-1843 (RWR)
                                        )
BRENNAN MCFARLANE, JR.,                 )
94 Greenwood Ave.,                      )          **JURY TRIAL DEMANDED**
Haskell, NJ 07420,                      )
                                        )
ANTONYA HUNTENBURG,                     )
1233 12th St., NW,                      )
Washington, DC 20005,                   )
                                        )
BARRY KNIGHT,                           )
1233 12th St., NW,                      )
Washington, DC 20005,                   )
                                        )
TIMOTHY PILAR,                          )
No fixed address,                       )
                                        )
MARSHALL SCOTT,                         )
9545 Fern Hollow Way,                   )
Montgomery Village, MD 20886,           )
                                        )
BRIAN EISTER,                           )
111 Antelope Dr.,                       )
Lyons, CO 80540,                        )
                                        )
TRACEY JOHNSTONE,                       )
614 Revhoff St.,                        )
Louisville, KY 40217,                   )
                                        )
JUSTINE MARK,                           )
6613 Aylesboro Ave.,                    )
Pittsburgh, PA 15217,                   )
                                        )
HARRIS NTABAKOS,                        )
No fixed address,                       )
                                        )
RODOLFO ROBERTS,                        )
1233 12th St., NW,                      )
Washington, DC 20005,                   )
                                        )
            PLAINTIFFS                  )

1

         vs.                                    )
                                                )
DISTRICT OF COLUMBIA,                           )
1350 Pennsylvania Ave., NW,                     )
Suite 316,                                      )
Washington, DC 20004,                           )
                                                )
CHIEF CATHY LANIER,                             )
*in her official capacity as Metropolitan Police*  )
*Department Chief of Police*,                   )
300 Indiana Ave., NW,                           )
Washington, DC 20001,                           )
                                                )
IRVIN NATHAN,                                   )
*in his official capacity as Attorney General for*  )
*the District of Columbia*,                     )
441 4th St., NW,                                )
Washington, DC 20001,                           )
                                                )
SGT. JAMES SCHAEFER (#S777),                    )
*in his individual capacity*,                   )
Metropolitan Police Department                  )
Special Operations Division,                    )
2301 L Street, NW,                              )
Washington, DC 20037,                           )
                                                )
OFC. WEN AI (#4412),                            )
*in his individual capacity*,                   )
Metropolitan Police Department                  )
Special Operations Division,                    )
2301 L Street, NW,                              )
Washington, DC 20037,                           )
                                                )
OFC. ROBERT WELLS (#3303)                       )
*in his individual capacity*,                   )
Metropolitan Police Department                  )
Special Operations Division,                    )
2301 L Street, NW,                              )
Washington, DC 20037,                           )
                                                )
OFC. VENE LAGON (#3187),                        )
*in her individual capacity*,                   )
Metropolitan Police Department                  )
Special Operations Division,                    )
2301 L Street, NW,                              )
Washington, DC 20037,                           )

OFC. ANDRES SILVA (#3881),               )
*in his individual capacity,*           )
Metropolitan Police Department      )
Special Operations Division,         )
2301 L Street, NW,                )
Washington, DC 20037,          )
                                    )
OFC. MICHAEL MENTZER (#3017),  )
*in his individual capacity,*           )
Metropolitan Police Department      )
Special Operations Division,         )
2301 L Street, NW,                )
Washington, DC 20037,          )
                                    )
OFC. OSCAR GARIBAY (#2739),    )
*in his individual capacity,*           )
Metropolitan Police Department      )
Second District,                   )
3320 Idaho Ave., NW,           )
Washington, DC 20016,          )
                                    )
OFC. STEPHEN FRANCHAK (#3123), )
*in his individual capacity,*           )
Metropolitan Police Department      )
Special Operations Division,         )
2301 L Street, NW,                )
Washington, DC 20037,          )
                                    )
SGT. STEVE URPS (#495),         )
*in his individual capacity,*           )
Metropolitan Police Department      )
Special Operations Division,         )
2301 L Street, NW,                )
Washington, DC 20037,          )
                                    )
OFC. TYRONE FREEMAN (#4557), a/k/a )
TYRONE EVANS-FREEMAN,         )
*in his individual capacity,*           )
Metropolitan Police Department      )
Special Operations Division,         )
2301 L Street, NW,                )
Washington, DC 20037,          )
                                    )
                                    )
_____)

3

LT. PAUL NIEPLING,                                      )
*in his individual capacity*,                           )
Metropolitan Police Department                          )
Special Operations Division,                            )
2301 L Street, NW,                                      )
Washington, DC 20037,                                   )
                                                        )
CAPT. ROBERT HALBLEIB,                                  )
*in his individual capacity*,                           )
Metropolitan Police Department                          )
Special Operations Division,                            )
2301 L Street, NW,                                      )
Washington, DC 20037,                                   )
                                                        )
SGT. JOHNNIE WALTER,                                    )
*in his individual capacity*,                           )
Metropolitan Police Department                          )
Special Operations Division,                            )
2301 L Street, NW,                                      )
Washington, DC 20037,                                   )
                                                        )
LT. LARRY SCOTT (#164),                                 )
*in his individual capacity*,                           )
Metropolitan Police Department                          )
Special Operations Division,                            )
2301 L Street, NW,                                      )
Washington, DC 20037,                                   )
                                                        )
LT. JAMES MCCOY,                                        )
*in his individual capacity*,                           )
Metropolitan Police Department                          )
Special Operations Division,                            )
2301 L Street, NW,                                      )
Washington, DC 20037,                                   )
                                                        )
CAPT. PAUL SHELTON,                                     )
*in his individual capacity*,                           )
Metropolitan Police Department                          )
Special Operations Division,                            )
2301 L Street, NW,                                      )
Washington, DC 20037,                                   )
                                                        )
CMDR. MICHAEL REESE,                                    )
*in his individual capacity*,                           )
Metropolitan Police Department                          )
Second District,                                        )

4

3320 Idaho Ave., NW,                                    )
Washington, DC 20016,                                   )
                                                        )
CMDR. STEVEN SUND,                                      )
*in his individual capacity*,                           )
Metropolitan Police Department                          )
Special Operations Division,                            )
2301 L Street, NW,                                      )
Washington, DC 20037,                                   )
                                                        )
ERIC WALDT,                                             )
*in his individual capacity*,                           )
Metropolitan Police Department                          )
Maurice T. Turner, Jr. Metropolitan Police              )
Academy,                                                )
4655 Blue Plains Dr., SW,                               )
Washington, DC 20032,                                   )
                                                        )
BANK OF AMERICA, N.A.,                                  )
100 North Tryon St.,                                    )
Charlotte, NC 28255,                                    )
                                                        )
BANK OF AMERICA, CORP.,                                 )
100 North Tryon St.,                                    )
Charlotte, NC 28255,                                    )
                                                        )
JOSEPH MASSEY,                                          )
20009 Farmingdale Ct.                                   )
Hagerstown, MD 21742                                    )
*in his individual and official capacity as Vice*       )
*President of Corporate Security Services for*          )
*Bank of America*,                                      )
                                                        )
THE JOHN AKRIDGE CO.,                                   )
601 13th St., NW,                                       )
Suite 300 North,                                        )
Washington, DC 20005,                                   )
                                                        )
PHILIP J. MCGOVERN,                                     )
*in his individual and official capacity as*            )
*Property Management Assistant of 1090*                 )
*Vermont Avenue NW for*                                 )
*The John Akridge Co.,*                                 )
601 13th St., NW,                                       )
Suite 300 North,                                        )
Washington, DC 20005,                                   )

|  | ) |
| --- | --- |
| KATHLEEN MCKEON, | ) |
| *in her individual and official capacity as* | ) |
| *Property Manager of 1090 Vermont Avenue* | ) |
| *NW for The John Akridge Co.,* | ) |
| 601 13th St., NW, | ) |
| Suite 300 North, | ) |
| Washington, DC 20005, | ) |
|  | ) |
|  | ) |
| JUDY OAKLEY, | ) |
| *in her individual and official capacity as* | ) |
| *Property Manager of 1090 Vermont Avenue* | ) |
| *NW for The John Akridge Co.,* | ) |
| 601 13th St., NW, | ) |
| Suite 300 North, | ) |
| Washington, DC 20005, | ) |
|  | ) |
| DEFENDANTS | ) |
|  | ) |

## FIRST AMENDED COMPLAINT

## THE PARTIES

1.      Plaintiff SAMUEL JEWLER is a citizen of the District of Columbia residing at 3266 Worthington St., NW, Washington, DC 20015.

2.      Plaintiff BRENNAN MCFARLANE, JR. is a citizen of New Jersey residing at 94 Greenwood Ave., Haskell, NJ 07420.

3.      Plaintiff ANTONYA HUNTENBURG is a citizen of the District of Columbia residing at 1233 12th St., NW, Washington, DC 20005.

4.      Plaintiff BARRY KNIGHT is a citizen of the District of Columbia residing at 1233 12th St., NW, Washington, DC 20005.

5.      Plaintiff TIMOTHY PILAR is a citizen of the District of Columbia residing at no fixed address.

6.      Plaintiff MARSHALL SCOTT is a citizen of Maryland residing at 9545 Fern Hollow Way, Montgomery Village, MD 20886.

7.      Plaintiff BRIAN EISTER is a citizen of Colorado residing at 111 Antelope Dr., Lyons, CO 80540.

8.      Plaintiff TRACEY JOHNSTONE is a citizen of Kentucky residing at 614 Revhoff St., Louisville, KY 40217.

9.      Plaintiff JUSTINE MARK is a citizen of Pennsylvania residing at 6613 Aylesboro Ave., Pittsburgh, PA 15217.

10.     Plaintiff HARRIS NTABAKOS is a citizen of the District of Columbia residing at no fixed address.

11.     Plaintiff RODOLFO ROBERTS is a citizen of the District of Columbia residing at 1233 12th St., NW, Washington, DC 20005.

12.     The Metropolitan Police Department is an agency of Defendant DISTRICT OF COLUMBIA, which is a municipal corporation.

13.     Defendant CHIEF CATHY LANIER is employed by the Metropolitan Police Department as Chief of Police.  Pursuant to D.C. Code § 5-105.05, CHIEF CATHY LANIER is empowered by law enforce the D.C. Code, including D.C. Code § 22-1307 (hereinafter the "Blocking Passage law").  CHIEF CATHY LANIER is sued in her official capacity.

14.     Defendant IRVIN NATHAN is the Attorney General for the District of Columbia.  Pursuant to D.C. Code § 23-101, IRVIN NATHAN is empowered by law to prosecute violations of D.C. Code § 22-1307.  IRVIN NATHAN is sued in his official capacity.

15.     Defendant SGT. JAMES SCHAEFER is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant

to this Complaint, SGT. JAMES SCHAEFER was acting under color of District law within the scope of his employment at the Metropolitan Police Department. SGT. JAMES SCHAEFER is sued in his individual capacity.

16.     Defendant OFC. WEN AI is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, OFC. WEN AI was acting under color of District law within the scope of his employment at the Metropolitan Police Department. OFC. WEN AI is sued in his individual capacity.

17.     Defendant OFC. ROBERT WELLS is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, OFC. ROBERT WELLS was acting under color of District law within the scope of his employment at the Metropolitan Police Department. OFC. ROBERT WELLS is sued in his individual capacity.

18.     Defendant OFC. VENE LAGON is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, OFC. VENE LAGON was acting under color of District law within the scope of her employment at the Metropolitan Police Department. OFC. VENE LAGON is sued in her individual capacity.

19.     Defendant OFC. ANDRES SILVA is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, OFC. ANDRES SILVA was acting under color of District law within the scope of his employment at the Metropolitan Police Department. OFC. ANDRES SILVA is sued in his individual capacity.

20.     Defendant OFC. MICHAEL MENTZER is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times

relevant to this Complaint, OFC. MICHAEL MENTZER was acting under color of District law within the scope of his employment at the Metropolitan Police Department. OFC. MICHAEL MENTZER is sued in his individual capacity.

21.     Defendant OFC. OSCAR GARIBAY is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, OFC. OSCAR GARIBAY was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  OFC. OSCAR GARIBAY is sued in his individual capacity.

22.     Defendant OFC. STEPHEN FRANCHAK is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, OFC. STEPHEN FRANCHAK was acting under color of District law within the scope of his employment at the Metropolitan Police Department. OFC. STEPHEN FRANCHAK is sued in his individual capacity.

23.     Defendant SGT. STEVE URPS is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, SGT. STEVE URPS was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  SGT. STEVE URPS is sued in his individual capacity.

24.     Defendant OFC. TYRONE FREEMAN a/k/a TYRONE EVANS-FREEMAN is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, OFC. TYRONE FREEMAN was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  OFC. TYRONE FREEMAN is sued in his individual capacity.

25.     Defendant CAPT. ROBERT HALBLEIB is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, CAPT. ROBERT HALBLEIB was acting under color of District law within the scope of his employment at the Metropolitan Police Department. CAPT. ROBERT HALBLEIB is sued in his individual capacity.

26.     Defendant LT. PAUL NIEPLING is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, LT. PAUL NIEPLING was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  LT. PAUL NIEPLING is sued in his individual capacity.

27.     Defendant SGT. JOHNNIE WALTER is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, SGT. JOHNNIE WALTER was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  SGT. JOHNNIE WALTER is sued in his individual capacity.

28.     Defendant LT. LARRY SCOTT is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, LT. LARRY SCOTT was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  LT. LARRY SCOTT is sued in his individual capacity.

29.     Defendant LT. JAMES MCCOY is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, LT. JAMES MCCOY was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  LT. JAMES MCCOY is sued in his individual capacity.

30.     Defendant CAPT. PAUL SHELTON is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, CAPT. PAUL SHELTON was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  CAPT. PAUL SHELTON is sued in his individual capacity.

31.     Defendant CMDR. MICHAEL REESE is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, CMDR. MICHAEL REESE was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  CMDR. MICHAEL REESE is sued in his individual capacity.

32.     Defendant CMDR. STEVEN SUND is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, CMDR. STEVEN SUND was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  CMDR. STEVEN SUND is sued in his individual capacity.

33.     Defendant ERIC WALDT is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, ERIC WALDT was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  ERIC WALDT is sued in his individual capacity.

34.     Defendant BANK OF AMERICA, N.A. is a National Banking Association with its principal place of business in Charlotte, North Carolina.  BANK OF AMERICA, N.A. is a wholly-owned subsidiary of Defendant BANK OF AMERICA CORP.

35.     Defendant BANK OF AMERICA CORP. is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

36.     Defendant JOSEPH MASSEY is and was, at all times relevant to this Complaint, employed by BANK OF AMERICA, N.A. or BANK OF AMERICA CORP. as Vice President of Corporate Security Services.  At all times relevant to this Complaint, JOSEPH MASSEY was acting within the scope of his employment at BANK OF AMERICA, N.A. or BANK OF AMERICA CORP.  JOSEPH MASSEY is sued in his individual capacity as well as his capacity as an employee of BANK OF AMERICA, N.A. or BANK OF AMERICA CORP.

37.     Defendant THE JOHN AKRIDGE CO. is a Virginia corporation with its principal place of business in Washington, D.C.

38.     Defendant PHILIP J. MCGOVERN is and was, at all times relevant to this Complaint, employed by THE JOHN AKRIDGE CO. as Property Management Assistant of 1090 Vermont Avenue NW.  At all times relevant to this Complaint, PHILIP J. MCGOVERN was acting within the scope of his employment at THE JOHN AKRIDGE CO.  PHILIP J. MCGOVERN is sued in his individual capacity as well as his capacity as an employee of THE JOHN AKRIDGE CO.

39.     Defendant KATHLEEN MCKEON is and was, at all times relevant to this Complaint, employed by THE JOHN AKRIDGE CO. as Property Manager of 1090 Vermont Avenue NW.  At all times relevant to this Complaint, KATHLEEN MCKEON was acting within the scope of her employment at THE JOHN AKRIDGE CO. KATHLEEN MCKEON is sued in her individual capacity as well as her capacity as an employee of THE JOHN AKRIDGE CO.

40.     Defendant JUDY OAKLEY was, at all times relevant to this Complaint, employed by THE JOHN AKRIDGE CO. as Property Manager of 1090 Vermont Avenue NW.  At all times relevant to this Complaint, JUDY OAKLEY was acting within the scope of her employment at THE JOHN AKRIDGE CO.  JUDY OAKLEY is sued in her

12

individual capacity as well as her capacity as an employee of THE JOHN AKRIDGE CO.

JURISDICTION AND VENUE

41.     This action arises under the District of Columbia common law, 42 USC § 1983, and 28 USC § 2201.

42.     This Court has jurisdiction over the parties pursuant to D.C. Code §§ 13-423(a)(3) and 13-334(a) and under the conspiracy theory of jurisdiction.

43.     This Court has jurisdiction over the subject matter pursuant to 28 USC §§ 1331 and 1367(a).

44.     Venue is proper in this district pursuant to 28 USC § 1391(b)(2) because the events or omissions giving rise to this action occurred in the District of Columbia.

STATEMENT OF FACTS

*A "Sleepful" Protest*

45.     Plaintiffs are members of Occupy DC, which is part of the larger Occupy movement.

46.     The Occupy Movement is a people-initiated movement that commenced with Occupy Wall Street in Zucotti Park, now called Liberty Square, in Manhattan's Financial District in New York City on September 17, 2011.  At its peak, Occupy had spread to hundreds of cities, towns and states in the United States and to more than 1500 locations worldwide.  The movement seeks to expose how the wealthiest 1% of society are promulgating an unfair global economy that is harming people, and destroying communities worldwide.

47.     A key purpose of the Occupy Movement is to raise awareness about the abuse of power and lack of accountability on the part of large financial institutions.

48.     The Occupy protesters' physical presence in a public space is a key component of the Occupy protesters' political statement and petitioning conduct.  It expresses the Occupy protesters' statement of the 99% taking back society in a way that other forms of protest could not express.

49.     On or about April 4, 2012, members of Occupy DC began daily protests in front of Bank of America.

50.     The Occupy protesters' physical presence in front of Bank of America was a core component of Plaintiffs' message that they sought to convey to the world.

51.     Occupy DC, along with the entire Occupy movement, seeks to begin an ongoing discussion about reforming banking and financial institutions and removing special interests from government.

52.     The location in front of Bank of America's offices is also fundamental to Plaintiffs' message.  Locating the demonstration there communicates a message about the object of their protest, and that message could not be communicated as effectively in another location.  Plaintiffs have a right to assemble near the object of their protest so that they may be seen and heard.

53.     Plaintiffs believed, and expressed through their signs, that Bank of America was unfairly foreclosing on people's homes and refusing to give loan modifications.

54.     The protest outside Bank of America came to be called a "sleepful protest" by many Occupy members because some of the participants slept on the sidewalk outside Bank of America overnight and/or remained in sleeping bags during the day.

55.     The protesters' slumber and sleeping bags were in part symbolic and in part facilitative of other speech activities.

56.     Numerous "sleepful protests" occurred in other cities both before and after the events described in this Complaint.

57.     By sleeping and/or being in a sleeping bag, the protesters were expressing their message that individuals who were being evicted from their homes by Bank of America had nowhere to go.  They sought to bring the problem of homelessness to Bank of America's "doorstep," so to speak.

58.     Additionally, many protesters believed that it was illegal to sleep in McPherson Square, but legal to sleep on a D.C. sidewalk that was not under the jurisdiction of the National Park Service.  Thus, many individuals who wished to be in McPherson Square on a continuing basis moved to the sidewalk to sleep at night.

59.     Although this Complaint refers to the demonstration as a "sleepful protest," none of the Plaintiffs were sleeping or attempting to sleep at the time they were arrested.

60.     The western sidewalk of Vermont Avenue, N.W. between K Street and Thomas Circle, which includes the sidewalk in front of 1090 Vermont Ave., NW where the sleepful protest occurred, is approximately 40 feet wide.

61.     In the vicinity where the sleepful protesters had gathered, there are four diamond-shaped flower boxes in the middle of the sidewalk which are approximately 7' on each side.  There is also a larger triangular tree and flower box in the middle of the sidewalk near the intersection of Vermont Ave. and L St., NW.

*Sidewalk Widths*

62.     The D.C. Department of Transportation Design and Engineering Manual (Apr. 200 ed.)(hereinafter "DDOT Manual"), § 29.4.1.1, notes that "Most persons will avoid the area less than . . . 18-30 in. from a building façade."

63.     As to those sleepful protesters who were within an area less than 18-30 in. from the building façade, they were in an area where it was unlikely that pedestrians would travel even if the protesters had not been there, particularly in light of the large width of that particular sidewalk.

64.     The DDOT Manual, § 29.4.1.1, states, "The minimum continuous and unobstructed clear width of a pedestrian access route should be 4 ft., exclusive of the width of the curb."

65.     At all times relevant to this Complaint, the sleepful protesters were positioned in such a way that there was an unobstructed clear width for pedestrian access of at least 4 feet.

66.     The DDOT Manual, § 29.12, states, "The minimum clear path around utility structures, street furniture, and other encroachments shall be 3 feet."

67.     At all times relevant to this Complaint, the sleepful protesters were positioned in such a way that there was a clear path around the protesters and any encroachments of at least 3 feet.

68.     The Americans with Disabilities Act Guidelines for Buildings and Facilities (as amended through Sep. 2002), § 4.3.3 prescribes, "The minimum clear width of an accessible route shall be 36 in."

69.     At all times relevant to this Complaint, the sleepful protesters were positioned in such a way that there was a clear width of an accessible route of at least 36 inches.

70.     The D.C. Department of Transportation Public Space Permits and Records Branch maintains a Designated Street Distribution (card file) for each street within the District of Columbia.

71.     The Designated Street Distribution file for Vermont Ave, N.W. lists a sidewalk width of 40' for the western sidewalk between K St. and Thomas Cir.

*The Conspiracy*

72.     Defendant JOSEPH MASSEY is a retired MPD officer.

73.     During part of the time that Defendant JOSEPH MASSEY was an MPD officer, he worked with Defendant LT. LARRY SCOTT.

74.     At one point, both Defendant JOSEPH MASSEY and LT. LARRY SCOTT had been part of the MPD's SWAT team together.

75.     After retiring from MPD, Defendant JOSEPH MASSSEY eventually became employed by Defendant BANK OF AMERICA, N.A. or BANK OF AMERICA, CORP as a security executive.

76.     On information and belief, in early April 2012, Defendant JOSEPH MASSEY spoke to Defendant LT. LARRY SCOTT about the protesters in front of Bank of America's offices at 1090 Vermont Ave., NW.

77.     On information and belief, during the conversation between Defendant JOSEPH MASSEY and Defendant LT. LARRY SCOTT, the two discussed plans to have the protesters illegally arrested.

78.     At the time of the meeting between Defendant JOSEPH MASSEY and Defendant LT. LARRY SCOTT, neither had any reason to believe that the protesters had

17

blocked passage on the sidewalk in front of Bank of America's offices at 1090 Vermont Ave., NW or had committed any other crime.

79.     Further, at the time of the meeting between Defendant JOSEPH MASSEY and Defendant LT. LARRY SCOTT, neither had any reason to believe that the protesters would block passage or commit any other crime in the future.

80.     Nevertheless, on information and belief, Defendant JOSEPH MASSEY sought the assistance of LT. LARRY SCOTT to have the protesters arrested because the sidewalk demonstration was embarrassing to Defendants BANK OF AMERICA, N.A. and BANK OF AMERICA, CORP.

81.     Thereafter, on information and belief, in furtherance of the conspiracy, Defendant LT. LARRY SCOTT spoke to his superiors about potential plans to have the protesters arrested.

82.     On information and belief, as a result of Defendant LT. LARRY SCOTT speaking to his superior about potential plans to have the protesters arrested a meeting occurred in early April, in furtherance of the conspiracy, between and amongst Defendants LT. LARRY SCOTT, CMDR. SUND, CAPT. PAUL SHELTON, and unknown attorneys from the District of Columbia Office of the Attorney General.

83.     On information and belief, at the meeting with the attorneys from the District of Columbia Office of the Attorney General, the attorneys advised that the Blocking Passage law could be properly applied to arrest protesters who were "blocking" a sidewalk simply by sitting on the ground, no matter how small a percentage of the sidewalk they took up or how much space pedestrians had to maneuver around them.

84.     On information and belief, subsequent to the meeting with the attorneys from the District of Columbia Office of the Attorney General, on the morning of April 10, 2012, Defendants PHILIP J. MCGOVERN, LT. LARRY SCOTT, and JOSEPH

MASSEY held a meeting to discuss the protest.  On information and belief, Defendants KATHLEEN MCKEON and JUDY OAKLEY also participated in the meeting.  Each of the participants was acting pursuant to, and in order to further the wishes of, their respective employers.  The meeting took place at 1090 Vermont Ave., NW, Washington, DC.

85.    At the meeting, Defendants PHILIP J. MCGOVERN, LT. LARRY SCOTT, and JOSEPH MASSEY, and on information and belief, KATHLEEN MCKEON and JUDY OAKLEY, conspired to violate the plaintiffs' constitutional, statutory, and common law rights.  The conspiracy consisted of an agreement to have LT. LARRY SCOTT give a dispersal order and then have his officers arrest any protesters that did not leave, regardless of whether they were breaking any law.  The conspiracy aimed to eliminate an embarrassing situation for defendants THE JOHN AKRIDGE CO., BANK OF AMERICA, N.A., and BANK OF AMERICA CORP.  The participants at the meeting believed that arresting the protesters who gathered that day and any subsequent days would ensure that the protest would come to an end.

86.    Shortly after Defendants PHILIP J. MCGOVERN, LT. LARRY SCOTT, and JOSEPH MASSEY, and on information and belief, KATHLEEN MCKEON and JUDY OAKLEY had finished the meeting, LT. LARRY SCOTT, in furtherance of the conspiracy, gave the protesters an order to disperse.  The protesters who did not leave were arrested.  This scenario repeated itself daily, but often with different police officers, for the next three days, at the direction of LT. LARRY SCOTT.  The dispersal orders and arrests each day were carried out in furtherance of the conspiracy.

87.    After the arrests, Defendant PHILIP J. MCGOVERN sent an email to Defendants JUDY OAKLEY, KATHLEEN MCKEON, and the tenants of 1090 Vermont Ave., NW explaining that while the "protesters have been well-behaved and quiet, we

still want to take all possible steps to effect their removal from outside our building and ensure that they do not return." The email further stated that the "MPD was successful in removing approximately 40 protesters" and that they had been "advised that MPD will be patrolling our block regularly to mitigate the likelihood of the return of the protesters and to act in the event of a recurrence."

*The April 10, 2012 Arrests*

88.    On April 10, 2012, a group of participants, including Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS, were sitting on the sidewalk outside of a Bank of America branch at 1090 Vermont Ave., NW, Washington, DC as part of their sleepful protest.

89.    The protesters reasonably expected that less than fifty persons would participate and less than fifty persons in fact attended. The assembly occurred on the sidewalk and not on a District street.

90.    The assembly took place solely on a public sidewalk and did not prevent pedestrians from using the sidewalk or crosswalks.

91.    While Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS were sitting in front of Bank of America along with other protesters, several MPD officers approached and one of them told the group that they had to move away from the building's windows because they were blocking the windows.

92.    The protesters, including Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS, said "OK, we'll move," and moved away from the windows to another spot on the sidewalk, where they sat down again.

93.    Workers then began washing the windows.

94.     Another MPD officer told the protesters, including Plaintiffs HARRIS
NTABAKOS and RODOLFO ROBERTS, that if they did not leave they would be
arrested.

95.     Plaintiff HARRIS NTABAKOS, confused by the conflicting orders, asked
for clarification and was told that he needed to leave.

96.     After the workers finished washing the windows, Plaintiffs HARRIS
NTABAKOS and RODOLFO ROBERTS moved back to the original spot where they
had been sitting.

97.     Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS at that time
were sitting cross-legged next to each other, parallel and slightly in front of the outer wall
of the building.  They were taking up approximately 2.5' of the approximately 40' width
of the sidewalk.  They were holding cardboard signs, or had such signs leaning against
them, on which political messages were written.

98.     Plaintiff HARRIS NTABAKOS's sign read "Bank of rupt America."

99.     Plaintiff RODOLFO ROBERTS' sign read "The ATM fee you just paid
could have fed a hungry child a meal."

100.    Defendant LT. LARRY SCOTT ordered the group, including Plaintiffs
HARRIS NTABAKOS and RODOLFO ROBERTS, to leave or be arrested.

101.    Some of the protesters stood up, leaving Plaintiffs HARRIS NTABAKOS
and RODOLFO ROBERTS as the only protesters remaining.

102.    Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS were not
blocking or incommoding any passersby or violating any other law.  They were not in
any way loud or disorderly and their failure to obey the MPD officer's order that they
leave was justified by the fact that the order was unconstitutional.

103.    Defendant SGT. STEVE URPS ordered Defendants OFC. ROBERT
WELLS and OFC. TYRONE FREEMAN to arrest Plaintiffs HARRIS NTABAKOS and
RODOLFO ROBERTS.

104.    On information and belief, Defendant SGT. STEVE URPS was the
supervisor at the scene, although he was not necessarily the highest ranking officer
present.

105.    Defendant OFC. ROBERT WELLS arrested Plaintiff HARRIS
NTABAKOS.

106.    Defendant OFC. TYRONE FREEMAN arrested Plaintiff RODOLFO
ROBERTS.

107.    Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS were
transported to the MPD's Second District Station where they were released with citations
to appear in D.C. Superior Court on April 26, 2012 on charges of Blocking Passage.

108.    The arrests of Plaintiffs HARRIS NTABAKOS and RODOLFO
ROBERTS on April 10, 2012 violated their constitutional rights, as well as their statutory
rights under the First Amendment Assemblies Act of 2004, D.C. Code § 5-331.01, *et
seq.*, and their rights under the District common law.

109.    Defendant SGT. STEVE URPS told a co-worker that he believed that
Defendant LT. LARRY SCOTT had made illegal lockups of Plaintiffs HARRIS
NTABAKOS and RODOLFO ROBERTS, but decided not to speak to a superior official
about his concerns.

*The April 11, 2012 Arrests*

110.    On April 11, 2012, a group of participants, including Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG and BARRY KNIGHT were sitting on the sidewalk outside of a Bank of America branch at 1090 Vermont Ave., NW, Washington, DC as part of their sleepful protest.

111.    The protesters reasonably expected that less than fifty persons would participate and less than fifty persons in fact attended.  The assembly occurred on the sidewalk and not on a District street.

112.    The assembly took place solely on a public sidewalk and did not prevent pedestrians from using the sidewalk or crosswalks.

113.    At approximately 7:00 AM, Defendant SGT. JOHNNIE WALTER observed the sleepful protest participants sitting on the sidewalk outside of the Bank of America branch at 1090 Vermont Ave., NW, Washington, DC.  Defendant SGT. JOHNNIE WALTER called or radioed to report his observation.

114.    LT. PAUL NIEPLING and CAPT. ROBERT HALBLEIB then arrived on the scene and conferred about the situation.

115.    On information and belief, Defendant LT. PAUL NIEPLING advised Defendant CAPT. ROBERT HALBLEIB that the protesters should be ordered to leave. Although Defendant CAPT. ROBERT HALBLEIB had a higher rank than Defendant LT. PAUL NIEPLING, on information and belief, he deferred to LT. PAUL NIEPLING's judgment because he was relatively new to working Special Operations Division and LT. PAUL NIEPLING was relatively experienced.

23

116.    Defendant CAPT. ROBERT HALBLIEB was the watch commander during the incident with the sleepful protesters on April 11, 2012 and was responsible for ensuring that all of his subordinates acted in compliance with the law.

117.    On information and belief, Defendant CAPT. ROBERT HALBLEIB instructed Defendant LT. LARRY SCOTT to order the protesters to leave, and if they did not, to have them arrested.

118.    While Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG and BARRY KNIGHT were sitting in front of Bank of America, several MPD officers approached the group and one of the MPD officers told the group that they had to be moving and could not be stationary.

119.    Plaintiff BARRY KNIGHT said the order was unlawful, he would not obey it, and that the protesters were not doing anything illegal.

120.    One of the protesters remarked to an MPD officer that what the plaintiffs were doing was not illegal.  The MPD officer responded, "We know it's not illegal."

121.    Defendant LT. LARRY SCOTT told TIMOTHY PILAR, ANTONYA HUNTENBURG, BARRY KNIGHT, and one other protester, that they were incommoding and that if they did not move they would be subject to arrest.  TIMOTHY PILAR, ANTONYA HUNTENBURG, and BARRY KNIGHT remained, but the other protester who had been sitting picked up his belongings and moved.

122.    After several minutes, LT. LARRY SCOTT gave a second warning to TIMOTHY PILAR, ANTONYA HUNTENBURG, and BARRY KNIGHT.

123.    One of the protesters announced to the MPD officers who were present that at a D.C. Council hearing on February 1, it had been clarified that the type of activity engaged in by the protesters is legal.

124.    After several more minutes, LT. LARRY SCOTT gave a third warning, informing the group that they were in violation of D.C. Code § 22-1307 and that if they did not move, they would be subject to arrest.

125.    On information and belief, Defendant LT. LARRY SCOTT then ordered Defendant SGT. STEVE URPS to select the officers who would be arresting the sleepful protesters.

126.    SGT. STEVE URPS designated Ofc. Matthew Brinkley and Defendants OFC. MICHAEL MENTZER and OFC. STEPHEN FRANCHAK to be arresting officers.

127.    When Defendant OFC. STEPHEN FRANCHAK or the other individuals designated as arresting officers questioned what they were being asked to do, they were told just to follow the orders given.

128.    LT. LARRY SCOTT then announced that the group was under arrest and ordered the arrest of Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG, and BARRY KNIGHT.

129.    Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG, and BARRY KNIGHT were not blocking or incommoding any passersby or violating any other law. They were not in any way loud or disorderly and their failure to obey LT. LARRY SCOTT'S orders that they leave was justified by the fact that the order was unconstitutional.

130.    Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG, and BARRY KNIGHT were sitting cross-legged on the sidewalk beside a flower box such that they would be out of the way of pedestrians.

131.    Defendant OFC. STEPHEN FRANCHAK arrested Plaintiff TIMOTHY PILAR.

132.     Defendant OFC. MICHAEL MENTZER arrested Plaintiff BARRY KNIGHT.

133.     Ofc. Matthew Brinkley arrested Plaintiff ANTONYA HUNTENBURG.

134.     Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG and BARRY KNIGHT were transported to the MPD's Second District Station where they were released with citations to appear in D.C. Superior Court on May 2, 2012 on charges of Blocking Passage.

135.     The arrests of Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG and BARRY KNIGHT on April 11, 2012 violated their constitutional rights, as well as their statutory rights under the First Amendment Assemblies Act of 2004, D.C. Code § 5-331.01, *et seq.*, and their rights under the District common law.

136.     Defendant SGT. STEVE URPS told the arresting officers that Defendant SGT. JOHNNIE WALTER would provide them with a narrative to copy into their police report.

137.     When Defendant OFC. STEPHEN FRANCHAK got up from the computer where he was typing up his narrative, Defendant SGT. JOHNNIE WALTER sat down and edited the narrative to falsely state that the arrestees had been blocking the entrance to the bank.

138.     When OFC. STEPHEN FRANCHAK returned, he rewrote the narrative to delete the erroneous statement.

139.     After Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG and BARRY KNIGHT were processed, Ofc. Matthew Brinkley and Defendants LT. LARRY SCOTT, OFC. STEPHEN FRANCHAK, OFC. MICHAEL MENTZER, and CAPT. PAUL SHELTON reported to Special Operations Division's roll call room.

140.    In the roll call room, Defendant CAP. PAUL SHELTON stated he was taking full responsibility for the arrests.

*The April 12, 2012 Arrests*

141.    On April 12, 2012, a group of participants, including Plaintiff JUSTINE MARK and Jacob Speirs were gathered on the sidewalk outside of a Bank of America branch at 1090 Vermont Ave., NW, Washington, DC as part of their sleepful protest.

142.    The protesters reasonably expected that less than fifty persons would participate and less than fifty persons in fact attended.  The assembly occurred on the sidewalk and not on a District street.

143.    The assembly took place solely on a public sidewalk and did not prevent pedestrians from using the sidewalk or crosswalks.

144.    While Plaintiff JUSTINE MARK and Jacob Speirs were sitting in front of Bank of America, Defendant LT. JAMES MCCOY asked the two of them if they wanted to be arrested.

145.    Plaintiff JUSTINE MARK responded that if she wanted to be arrested she would do something illegal, but that the last time she checked, she was allowed to sit with a sign on the sidewalk in America.

146.    Defendant LT. JAMES MCCOY said to Plaintiff JUSTINE MARK that if she did not want to be arrested, she should get up.

147.    Plaintiff JUSTINE MARK said to Defendant LT. JAMES MCCOY that the order was illegal and that she was not going to get up.

148.    Defendant LT. JAMES MCCOY gave three warnings to Plaintiff JUSTINE MARK and Jacob Speirs.  In the warnings, Defendant LT. JAMES MCCOY

stated, "This is Lieutenant McCoy of the MPD Special Operations Division. You are in violation of D.C. Code 1307, Blocking Passage. If you do not cease your unlawful behavior and disperse peacefully, you will be arrested."

149.   Plaintiff JUSTINE MARK and Jacob Speirs were not blocking or incommoding any passersby or violating any other law. They were not in any way loud or disorderly and their failure to obey the MPD officer's order that they leave was justified by the fact that the order was unconstitutional.

150.   Plaintiff JUSTINE MARK and Jacob Speirs at that time were sitting cross-legged next to each other, parallel and immediately next to the outer wall of the building. They were taking up approximately 2.5' of the approximately 40' width of the sidewalk. They were holding cardboard signs, or had such signs leaning against them, on which political messages were written.

151.   Plaintiff JUSTINE MARK's sign read "Banking institutions are more dangerous to our liberties than standing armies – Thomas Jefferson."

152.   Jacob Speirs' sign read "The ATM fee you just paid could have fed a hungry child a meal."

153.   Defendant OFC. ANDRES SILVA arrested Plaintiff JUSTINE MARK.

154.   Officer Luckett arrested Jacob Speirs.

155.   Plaintiff JUSTINE MARK and Jacob Speirs were transported to the MPD's Second District Station where they were released with citations to appear in D.C. Superior Court on May 2, 2012 on charges of Blocking Passage.

156.   The arrest of Plaintiff JUSTINE MARK on April 12, 2012 violated her constitutional rights, as well as her statutory rights under the First Amendment Assemblies Act of 2004, D.C. Code § 5-331.01, *et seq.*, and their rights under the District common law.

*The April 13, 2012 Arrests*

157.    On April 13, 2012, a group of participants, including Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR., was sitting on the sidewalk outside of a Bank of America branch at 1090 Vermont Ave., NW, Washington, DC as part of their sleepful protest.

158.    The protesters reasonably expected that less than fifty persons would participate and less than fifty persons in fact attended.  The assembly occurred on the sidewalk and not on a District street.

159.    The assembly took place solely on a public sidewalk and did not prevent pedestrians from using the sidewalk or crosswalks.

160.    Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR. were sitting in a row parallel and immediately next to the outer wall of the building.  They were taking up approximately 2.5' of the approximately 40' width of the sidewalk.  They were holding cardboard or posterboard signs, or had such signs leaning against them, on which political messages were written.

161.    Plaintiff BRIAN EISTER's sign read, "There are more vacant homes than there are homeless people."

162.    Plaintiff MARSHALL SCOTT's sign read, "Can you see how tired I am of capitalism?"

163.    Plaintiff SAMUEL JEWLER's sign read, "This is a protest."

164.    Plaintiff BRENNAN MCFARLANE, JR.'s sign read, "America this is your intervention."

29

165.    Plaintiff TRACEY JOHNSTONE's sign simply had the letter "A" with a circle around it, a well-known symbol of anarchy.

166.    While Plaintiffs SAMUEL JEWLER, SCOTT MARSHALL, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR. were sitting in front of Bank of America along with other protesters, one MPD officer told the group that if they did not move they would be arrested for blocking passage.

167.    Several people in the group asked how they were blocking passage, and one or two of them noted that the police were blocking a portion of the sidewalk by standing around in a semicircle.

168.    In fact, the numerous police officers at the scene were taking up more of the sidewalk than the protesters.  Even with the presence of the police officers and protesters, there was ample room for pedestrians to walk down the sidewalk.

169.    An MPD officer gave three warnings.

170.    At the time the warnings were given, there were few, if any, pedestrians walking down the sidewalk.

171.    Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR. were not blocking or incommoding any passersby or violating any other law.  They were not in any way loud or disorderly and their failure to obey the MPD officer's order that they leave was justified by the fact that the order was unconstitutional.

172.    Defendant SGT. JAMES SCHAEFER arrested Plaintiff SAMUEL JEWLER.

173.    Defendant OFC. WEN AI arrested Plaintiff MARSHALL SCOTT.

174.    Defendant OFC. ROBERT WELLS arrested Plaintiff BRIAN EISTER.

175.     Defendant OFC. VENE LAGON arrested Plaintiff TRACEY JOHNSTONE.

176.     Defendant OFC. OSCAR GARIBAY arrested Plaintiff BRENNAN MCFARLANE, JR.

177.     During the arrests, the protesters chanted "This is a legal protest."

178.     Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR. were transported to the MPD's Second District Station where they were released with citations to appear in D.C. Superior Court on May 2, 2012 on charges of Blocking Passage.

179.     The arrests of Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR. on April 13, 2012 violated their constitutional rights, as well as their statutory rights under the First Amendment Assemblies Act of 2004, D.C. Code § 5-331.01, *et seq.*, and their rights under the District common law.

*Dismissal of charges*

180.     Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS appeared in D.C. Superior Court on April 10, 2012 where they were arraigned.  Each of them was charged with one count of Blocking Passage and one count of Failure to Obey a Lawful Order.

181.     On July 18, 2012, the date scheduled for their criminal trial, Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS moved, through counsel, to dismiss their cases for want of prosecution.  Magistrate Judge Elizabeth Wingo granted the motion.

182.    Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG and BARRY KNIGHT appeared in D.C. Superior Court on May 2, 2012 and their cases were "no papered."

183.    Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, JUSTINE MARK, and BRENNAN MCFARLANE, JR. and Jacob Speirs appeared in D.C. Superior Court on May 3, 2012 and their cases were "no papered."

*Notice to the District and MPD's Lack of Supervision and Training*

184.    A 2003 report entitled, "Disorderly Conduct Arrests Made by Metropolitan Police Department Officers" described the Office of Police Complaint's extensive study of disorderly conduct arrests in the District and made policy recommendations that went to the Mayor and City Council.  The report provided the District with constructive notice of widespread constitutional violations.

185.    In 2010, the Council for Court Excellence (CCE) issued a report entitled, "Revising the District of Columbia Disorderly Conduct Statutes: A Report and Proposed Legislation."  The report noted that the then-existing statutes "may give too much discretion to police to determine what conduct is disorderly."

186.    The CCE report concluded that the then-existing law's prohibition on "crowding" was deemed to be too vague, and indicated that there was "agreement that the prohibition should not be framed so broadly that it can be used as an anti-loitering statute, which likely would be invalidated by the courts."

187.    The CCE report contained proposed legislation that prohibited "blocking" but not "incommoding," "obstructing" or "crowding."

188.    The D.C. Office of the Attorney General, MPD, and U.S. Attorney's Office dissented from the CCE proposed legislation, in part, because "'blocking' is likely to be construed more narrowly than 'crowding, obstructing, or incommoding.'" However, the dissenters still "recognize[d] that a law prohibiting crowding, obstructing, or incommoding the free use of sidewalks and entrances should not be used as a subterfuge for an unconstitutional loitering law."

189.    The D.C. Council subsequently took up consideration of the "Disorderly Conduct Amendment Act of 2010," Bill 18-425.  The Council received written testimony about this bill from Ann Marie Staudenmaier, a staff attorney at the Washington Legal Clinic for the Homeless, that police told "many" individuals to move along in situations which could not possibly be interpreted as incommoding.

190.    Despite the concerns raised by the CCE report and the Washington Legal Clinic for the Homeless, the Council enacted D.C. Code § 22-1307 with language that prohibits "crowd[ing], obstruct[ing], or incommod[ing]."

191.    The District was on notice, as a result of the CCE report and testimony from the Washington Legal Clinic for the Homeless, that the statute had the potential to be abused, and that its administration should be carefully monitored.

192.    As a result of the vagueness of D.C. Code § 22-1307, alone or in combination with the lack of MPD training and supervision and the failure of the Council to clarify the law, this provision has come to be used as an unconstitutional anti-loitering statute.

193.    In 2011, Bill Hassay, Jr., a solo musician performing at the corner of Wisconsin and M St., NW, was threatened by an MPD police officer with arrest for blocking a sidewalk.  The officer told Mr. Hassay that "pedestrians need the full width" of the sidewalk.

194.    Following the incident involving Hassay, the ACLU pointed out to high-ranking officials at MPD Headquarters and Second District that the officer had misinterpreted the law.

195.    The incident involving Hassay and the communication from the ACLU put the District on notice that without proper training and supervision, officers could and would apply the statute in a way that violated citizens' rights.

196.    MPD decisionmakers considered the issue to be of sufficient importance that, after a presentation by ACLU attorney Fritz Mulhauser, a high-ranking official, Assistant MPD Chief Groomes, confirmed that the officer had misinterpreted the law and wrote in an email that for there to be an arrest, "the sidewalk must be blocked, not partially blocked, causing pedestrians to move into the roadway."

197.    On February 1, 2012, the D.C. Council, Committee on the Judiciary, held a hearing regarding the 2011 revisions to the disorderly conduct statute.  At the hearing, Mr. Mulhauser testified that the ACLU had received a complaint that an officer had threatened to arrest a musician for simply standing on a sidewalk (presumably referring to Hassay) and that they had also heard the same kind of problems reported by advocates for the homeless.  Mr. Mulhauser suggested that the statute be amended to make clear that "incommoding" means that an individual is entirely blocking the sidewalk.

198.    Mr. Mulhauser supplemented his oral testimony with written testimony, advising that the statute had been applied to homeless individuals in the Georgetown area in a similar manner to how it was used against the musician.

199.    Mr. Mulhauser's testimony again put the District on notice that without proper training and supervision, officers could and would apply the statute in a way that violated citizens' rights.  By referring to the problems reported from homeless advocates,

Mr. Mulhauser put the District on notice that the incident involving Hassay was not an isolated or one-time problem.

200.    Kelly O'Meara, Director of the Office of Strategic Change, MPD also testified at the February 1, 2012 hearing.  Ms. O'Meara testified that after the enactment of the changes to the District's disorderly conduct law, MPD developed a written directive explaining the law and an online training session that could be delivered to all members of the MPD.  All members were required to certify that they had reviewed the directive and taken and passed the online training.

201.    However, neither the written directive nor the online training session addressed the issue of whether partial blocking was sufficient to justify an arrest.

202.    Councilmember Phil Mendelson asked Ms. O'Meara at the hearing whether it was worth conducting the online training again this year (referring to 2012).  Ms. O'Meara stated she thought MPD needed to review, based on the feedback they were getting from the ACLU and the Office of Police Complaints, what information needed to be updated and changed.

203.    Ms. O'Meara explained that everyone could agree that what happened to the musician in Georgetown was not appropriate, but that it sounded like it was only one person and Chief Groomes had already addressed it with the officers in patrol.

204.    Councilmember Mendelson explained that disorderly conduct offenses can be easily misunderstood and suggested that training may be as important, or more important, than the clarity that the Council thought it brought to the law.  He pointed out that an intensive refresher training may be needed, not doing it once.  Councilmember Mendelson asked Ms. O'Meara to get back to him on what MPD will do on intensive refresher training and how often.

205.    When asked by Councilmember Mendelson about ACLU's proposed amendment to the disorderly conduct statute, Ms. O'Meara noted that the issue was discussed at length by the Council for Court Excellence and that the term "incommoding" was added to ensure the statute reached more than "full blocking," such as situations where an individual was controlling the entire space.

206.    Despite being aware of the need for training and supervision, MPD did not update its Disorderly Conduct circular (CIR-11-01) to inform officers that partial blocking is not sufficient grounds for an arrest.  Instead, MPD allowed the Disorderly Conduct circular to expire in January 21, 2012 without renewal.

207.    In order to ensure that individuals' rights would not be violated, it was necessary to train all officers that the Blocking Passage law was not an anti-loitering ordinance, that officers could only order individuals to cease blocking and not to leave the area completely, that partial blocking was not illegal, and that orders could not be issued that would violate individuals' First Amendment rights.

208.    Defendant CMDR. STEVEN SUND is responsible for the training and supervision of officers within the Special Operations Division, including Defendants OFC. ROBERT WELLS, OFC. TYRONE FREEMAN, OFC. STEPHEN FRANCHAK, SGT. JAMES SCHAEFER, OFC. WEN AI, OFC. VENE LAGON, OFC. ANDRES SILVA, OFC. MICHAEL MENTZER, SGT. STEVE URPS, CAPT. ROBERT HALBLEIB, LT. PAUL NIEPLING, SGT. JOHNNY WALTER, CAPT. PAUL SHELTON, LT. LARRY SCOTT, and LT. JAMES MCCOY.

209.    The Special Operations Division is frequently called upon to monitor First Amendment activity and Defendant CMDR. STEVEN SUND was aware that training and supervision were necessary to ensure that laws prohibiting disorderly conduct,

including the Blocking Passage law, are not enforced in a manner that inhibits First Amendment activity.

210.    Nevertheless, Defendant CMDR. STEVEN SUND failed to adequately train and supervise the officers within Special Operations Division to ensure that the Blocking Passage law was not applied in a way that violated individuals' First Amendment rights.

211.    Defendant CMDR. MICHAEL REESE is responsible for the training and supervision of officers within the Second District, including Defendant OFC. OSCAR GARIBAY.

212.    Defendant CMDR. MICHAEL REESE was aware that training and supervision were necessary to ensure that the Blocking Passage law was not enforced in a manner that inhibits First Amendment activity.  Specifically, the incident involving Hassay and the subsequent conversation with the ACLU should have indicated to CMDR. MICHAEL REESE that additional training and supervision were necessary.

213.    Nevertheless, Defendant CMDR. MICHAEL REESE failed to adequately train and supervise the officers within the Second District to ensure that the Blocking Passage law was not applied in a way that violated individuals' First Amendment rights.

214.    Defendant ERIC WALDT was and is director of the Continuing Education Branch of the Maurice T. Turner, Jr. Metropolitan Police Academy.  In this capacity, Defendant ERIC WALDT is responsible for ensuring that MPD officers already on the force receive continuing education throughout their careers.

215.    Defendants OFC. ROBERT WELLS, SGT. STEVE URPS, CAPT. ROBERT HALBLEIB, LT. PAUL NIEPLING, SGT. JOHNNY WALTER, OFC. TYRONE FREEMAN, OFC. STEPHEN FRANCHAK, SGT. JAMES SCHAEFER, OFC. WEN AI, OFC. VENE LAGON, OFC. ANDRES SILVA, OFC. MICHAEL

MENTZER, OFC. OSCAR GARIBAY, CMDR. STEVEN SUND, CAPT. PAUL SHELTON, CMDR. MICHAEL REESE, LT. JAMES MCCOY, and LT. LARRY SCOTT were already on the force at the time the D.C. Council enacted the "Disorderly Conduct Amendment Act of 2010."  It was therefore the responsibility of Defendant ERIC WALDT to ensure that each of these defendants were properly trained on the new law.

216.    Defendant ERIC WALDT knew or should have known that training was necessary to ensure that the Blocking Passage law was not enforced in a manner that inhibits First Amendment activity.  Specifically, ERIC WALDT knew or should have known about the February 1, 2012 D.C. Council hearing, the concerns raised by the ACLU, and the incident involving Hassay.

217.    Nevertheless, Defendant ERIC WALDT failed to ensure that Defendants OFC. ROBERT WELLS, SGT. STEVE URPS, CAPT. ROBERT HALBLEIB, LT. PAUL NIEPLING, SGT. JOHNNY WALTER, CAPT. PAUL SHELTON, OFC. TYRONE FREEMAN, OFC. STEPHEN FRANCHAK, SGT. JAMES SCHAEFER, OFC. WEN AI, OFC. VENE LAGON, OFC. ANDRES SILVA, OFC. MICHAEL MENTZER, OFC. OSCAR GARIBAY, CMDR. STEVEN SUND, CMDR. MICHAEL REESE, LT. JAMES MCCOY, and LT. LARRY SCOTT were adequately trained so that they did not enforce the Blocking Passage law in a way that violated individuals' First Amendment rights.

*Future protests by the plaintiffs*

218.    The plaintiffs have a present desire to conduct future demonstrations, similar to those for which they were arrested, in front of Bank of America and/or at other locations within the District of Columbia.

219.    Plaintiff SAMUEL JEWLER has been chilled and deterred from engaging in conduct similar to that which resulted in his arrest at the sleepful protest because of a credible threat that he would be arrested, prosecuted, and convicted for conducting lawful First Amendment activity.

220.    Because of the vagueness of the Blocking Passage law, Plaintiff SAMUEL JEWLER cannot know what conduct law enforcement will consider to be "crowd[ing], obstruct[ing], or incommod[ing]" a sidewalk and whether the law is evenly enforced.  As a result, it is impossible for him to know whether he must comply with an order to disperse at a future assembly in which he remains stationary on a sidewalk, but is not completely blocking the sidewalk.  Plaintiff SAMUEL JEWLER has therefore abstained from attending protests in which the protesters were planning to remain stationary on a sidewalk.

221.    Plaintiff SAMUEL JEWLER presently has no intention of attending a protest in which protesters remain stationary on the sidewalk but do not completely block the sidewalk, because of a credible threat that the Blocking Passage law would be applied again to arrest him.  However, SAMUEL JEWLER would resume engaging in stationary protests which do not involve complete blockage of a sidewalk, such as the sleepful protest, if the Court clarified or struck down the Blocking Passage law.

222.    Plaintiffs BARRY KNIGHT and BRIAN EISTER intend to engage in protests at other locations in the District of Columbia similar to the sleepful protest which

resulted in their arrest.  At these future protests, Plaintiffs BARRY KNIGHT and BRIAN

EISTER intend to be stationary on a sidewalk, but not in such a way that they or other

protesters are completely blocking the sidewalk.  Maintaining a physical presence with a

message is an essential feature of these protests.

223.    Plaintiffs BARRY KNIGHT and BRIAN EISTER are reasonably

concerned that their actions will lead to arrest, prosecution, and conviction, despite the

constitutionally protected nature of the conduct.

224.    Plaintiff BRIAN EISTER has organized protests in which people have

decided not to attend because they were uncertain as to how the police would interpret

the Blocking Passage law.  Plaintiff BRIAN EISTER intends to organize future protests,

but is reasonably concerned that fewer people will attend these protests as a result of the

vagueness and overbreadth of the Blocking Passage law.

*Unconstitutionality of the Blocking Passage law*

225.    The terms "crowd," "obstruct," and "incommode" are undefined in the

Blocking Passage law.

226.    Without definition, these terms are so vague as to fail to provide the notice

due process demands so that citizens may shape their behavior in compliance with legal

norms.  Further, without definition, these terms are so vague as to vest unfettered

discretion to law enforcement to determine precisely how much crowding, obstructing, or

incommoding triggers the statute.

227.    The undefined terms are also so broad as to criminalize a substantial

amount of First Amendment protected activity.

228.    The vagueness and overbreadth of the Blocking Passage law has led to many law enforcement officials viewing it as a general anti-loitering ordinance and enforcing it as such.

229.    The Blocking Passage law violates the First and Fifth Amendments on its face and as applied to Plaintiffs' past and proposed future activities.

230.    If the Blocking Passage law does not on its face or, as properly applied, violate the First and Fifth Amendments, the widespread misapplication of the statute is itself a violation of the First and Fifth Amendments.

*Notice of claims*

231.    The appropriate and required notice of Plaintiffs' intent to sue the District was made by hand-delivering a copy of Plaintiffs' claims to the Mayor's designee, the Office of Risk Management, on October 5, 2012.

COUNT I:
FALSE ARREST / FALSE IMPRISONMENT
(MONETARY DAMAGES)

232.    This Count realleges and incorporates by reference each of the preceding paragraphs.

233.    Defendant OFC. ROBERT WELLS is liable to Plaintiff HARRIS NTABAKOS for arresting him without probable cause.

234.    Defendant OFC. TYRONE FREEMAN is liable to Plaintiff RODOLFO ROBERTS for arresting him without probable cause.

235.    Defendant OFC. STEPHEN FRANCHAK is liable to Plaintiff TIMOTHY PILAR for arresting him without probable cause.

236.    Defendant SGT. STEVE URPS is liable to Plaintiff ANTONYA HUNTENBURG for ordering Ofc. Matthew Brinkley to arrest her without probable cause.

237.    Defendant SGT. STEVE URPS is liable to Plaintiff HARRIS NTABAKOS for ordering Defendant OFC. ROBERT WELLS to arrest him without probable cause.

238.    Defendant SGT. STEVE URPS is liable to Plaintiff RODOLFO ROBERTS for ordering Defendant OFC. TYRONE FREEMAN to arrest him without probable cause.

239.    Defendant SGT. STEVE URPS is liable to Plaintiff ANTONYA HUNTENBURG for ordering Ofc. Matthew Brinkley to arrest her without probable cause.

240.    Defendant SGT. STEVE URPS is liable to Plaintiff ANTONYA HUNTENBURG for ordering Ofc. Matthew Brinkley to arrest her without probable cause.

241.    Defendant SGT. JAMES SCHAEFER is liable to Plaintiff SAMUEL JEWLER for arresting him without probable cause.

242.    Defendant OFC. WEN AI is liable to Plaintiff MARSHALL SCOTT for arresting him without probable cause.

243.    Defendant OFC. ROBERT WELLS is liable to Plaintiff BRIAN EISTER for arresting him without probable cause.

244.    Defendant OFC. VENE LAGON is liable to Plaintiff TRACEY JOHNSTONE for arresting her without probable cause.

245.    Defendant OFC. ANDRES SILVA is liable to Plaintiff JUSTINE MARK for arresting her without probable cause.

246.     Defendant LT. JAMES MCCOY is liable to Plaintiff JUSTINE MARK for ordering her arrest without probable cause.

247.     Defendant LT. LARRY SCOTT is liable to liable to Plaintiffs HARRIS NTABAKOS, RODOLFO ROBERTS, ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for ordering their arrest without probable cause.

248.     Defendant CAPT. ROBERT HALBLEIB is liable to liable to Plaintiffs ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for ordering their arrest without probable cause.

249.     Defendant OFC. MICHAEL MENTZER is liable to Plaintiff BARRY KNIGHT for arresting him without probable cause.

250.     Defendant OFC. OSCAR GARIBAY is liable to Plaintiff BRENNAN MCFARLANE, JR. for arresting him without probable cause.

251.     All of the individually named defendants, except for those sued only in their official capacities, are liable to all of the plaintiffs as co-conspirators pursuing the same goal of illegally arresting the plaintiffs.

252.     Defendants DISTRICT OF COLUMBIA, BANK OF AMERICA N.A., BANK OF AMERICA CORP., and THE JOHN AKRIDGE CO. are liable to all of the plaintiffs under the theory of respondeat superior.

COUNT II:
ABUSE OF PROCESS
(MONETARY DAMAGES)

253.     This Count realleges and incorporates by reference each of the preceding paragraphs.

254.     Defendant LT. LARRY SCOTT conspired with CAPT. PAUL SHELTON, CMDR. STEVEN SUND, JOSEPH MASSEY, PHILIP J. MCGOVERN,

KATHLEEN MCKEON, and JUDY OAKLEY to have the plaintiffs arrested and to induce the prosecution of the plaintiffs for the ulterior purpose of assisting his friend and former co-worker, JOSEPH MASSEY.

255.    Defendant LT. LARRY SCOTT conspired with CAPT. PAUL SHELTON, CMDR. STEVEN SUND, JOSEPH MASSEY, PHILIP J. MCGOVERN, KATHLEEN MCKEON, and JUDY OAKLEY to have the plaintiffs arrested and to induce the prosecution of the plaintiffs to achieve an end not contemplated by criminal prosecution, namely, to chill and deter the plaintiffs and other individuals from exercising their First Amendment rights by continuing their sleepful protest.

256.    Defendant JOSEPH MASSEY conspired with CAPT. PAUL SHELTON, CMDR. STEVEN SUND, LT. LARRY SCOTT, PHILIP J. MCGOVERN, KATHLEEN MCKEON, and JUDY OAKLEY to have the plaintiffs arrested and to induce the prosecution of the plaintiffs for the ulterior purpose of helping his employer, Defendant BANK OF AMERICA, N.A. or BANK OF AMERICA, CORP. to avoid the embarrassment and bad publicity that were perceived to be a result of the sleepful protest.

257.    Defendant JOSEPH MASSEY conspired with CAPT. PAUL SHELTON, CMDR. STEVEN SUND, LT. LARRY SCOTT, PHILIP J. MCGOVERN, KATHLEEN MCKEON, and JUDY OAKLEY to have the plaintiffs arrested and to induce the prosecution of the plaintiffs to achieve an end not contemplated by criminal prosecution, namely, to chill and deter the plaintiffs and other individuals from exercising their First Amendment rights by continuing their sleepful protest.

258.    Defendants PHILIP J. MCGOVERN, KATHLEEN MCKEON, and JUDY OAKLEY conspired with CAPT. PAUL SHELTON, CMDR. STEVEN SUND, and LT. LARRY SCOTT to have the plaintiffs arrested and to induce the prosecution of the

plaintiffs for the ulterior purpose of currying favor from its tenants at 1090 Vermont Ave., NW by removing the sleepful protesters.

259. Defendants PHILIP J. MCGOVERN, KATHLEEN MCKEON, and JUDY OAKLEY conspired with JOSEPH MASSEY, CAPT. PAUL SHELTON, CMDR. STEVEN SUND, LT. LARRY SCOTT, to have the plaintiffs arrested and to induce the prosecution of the plaintiffs to achieve an end not contemplated by criminal prosecution, namely, to chill and deter the plaintiffs and other individuals from exercising their First Amendment rights by continuing their sleepful protest.

260. Defendants DISTRICT OF COLUMBIA, THE JOHN AKRIDGE CO., BANK OF AMERICA, N.A., and BANK OF AMERICA CORP. are liable under the doctrine of respondeat superior.


## COUNT III:
## NEGLIGENT TRAINING AND SUPERVISION
## (MONETARY DAMAGES)


261. This Count realleges and incorporates by reference each of the preceding paragraphs.

262. Defendant DISTRICT OF COLUMBIA is liable to all of the plaintiffs for negligently failing to adequately train and supervise MPD employees regarding the proper application of the Blocking Passage law.

263. Defendant ERIC WALDT is liable to all of the plaintiffs for negligently failing to adequately train Defendants OFC. ROBERT WELLS, SGT. STEVE URPS, CAPT. ROBERT HALBLEIB, LT. PAUL NIEPLING, SGT. JOHNNY WALTER, OFC. TYRONE FREEMAN, OFC. STEPHEN FRANCHAK, SGT. JAMES SCHAEFER, OFC. WEN AI, OFC. VENE LAGON, OFC. ANDRES SILVA, OFC. MICHAEL

MENTZER, OFC. OSCAR GARIBAY, CMDR. STEVEN SUND, CMDR. MICHAEL
REESE, CAPT. PAUL SHELTON, LT. JAMES MCCOY, and LT. LARRY SCOTT
regarding the proper application of the Blocking Passage law.

264.    Defendant CMDR. STEVEN SUND is liable to Plaintiffs HARRIS
NTABAKOS, RODOLFO ROBERTS, TIMOTHY PILAR, SAMUEL JEWLER,
ANTONYA HUNTENBURG, MARSHALL SCOTT, BRIAN EISTER, TRACEY
JOHNSTONE, JUSTINE MARK, and BARRY KNIGHT for negligently failing to
adequately train and supervise Defendants OFC. ROBERT WELLS, SGT. STEVE
URPS, CAPT. ROBERT HALBLEIB, LT. PAUL NIEPLING, SGT. JOHNNY
WALTER, OFC. TYRONE FREEMAN, OFC. STEPHEN FRANCHAK, SGT. JAMES
SCHAEFER, CAPT. PAUL SHELTON, OFC. WEN AI, OFC. VENE LAGON, OFC.
ANDRES SILVA, and OFC. MICHAEL MENTZER.

265.    Defendant CMDR. MICHAEL REESE is liable to Plaintiff BRENNAN
MCFARLANE, JR. for negligently failing to adequately train and supervise Defendant
OFC. OSCAR GARIBAY.

266.    Defendant CMDR. STEVEN SUND is liable to all Plaintiffs for
negligently failing to adequately train and supervise Defendant LT. LARRY SCOTT.

267.    Defendant CMDR. STEVEN SUND is liable to Plaintiff JUSTINE
MARK for negligently failing to adequately train and supervise Defendant LT. JAMES
MCCOY.

268.    Defendant DISTRICT OF COLUMBIA is liable to all Plaintiffs under the
theory of respondeat superior.

COUNT IV:
VIOLATION OF THE FIRST AMENDMENT (42 USC § 1983)
(MONETARY DAMAGES)

269.     This Count realleges and incorporates by reference each of the preceding paragraphs.

270.     Defendant OFC. ROBERT WELLS is liable to Plaintiff HARRIS NTABAKOS for arresting him without probable cause and in retaliation for his exercise of his First Amendment rights.

271.     Defendant OFC. TYRONE FREEMAN is liable to Plaintiff RODOLFO ROBERTS for arresting him without probable cause and in retaliation for his exercise of his First Amendment rights.

272.     Defendant OFC. STEPHEN FRANCHAK is liable to Plaintiff TIMOTHY PILAR for arresting him without probable cause and in retaliation for his exercise of his First Amendment rights.

273.     Defendant SGT. STEVE URPS is liable to Plaintiff ANTONYA HUNTENBURG for ordering Ofc. Matthew Brinkley to arrest her without probable cause and in retaliation for her exercise of her First Amendment rights.

274.     Defendant SGT. STEVE URPS is liable to Plaintiff TIMOTHY PILAR for ordering Defendant OFC. STEPHEN FRANCHEK to arrest him without probable cause and in retaliation for his exercise of his First Amendment rights.

275.     Defendant SGT. STEVE URPS is liable to Plaintiff BARRY KNIGHT for ordering Defendant OFC. MICHAEL MENTZER to arrest him without probable cause and in retaliation for his exercise of his First Amendment rights.

276.     Defendant SGT. JAMES SCHAEFER is liable to Plaintiff SAMUEL JEWLER for arresting him without probable cause and in retaliation for his exercise of his First Amendment rights.

277.     Defendant OFC. WEN AI is liable to Plaintiff MARSHALL SCOTT for arresting him without probable cause and in retaliation for his exercise of his First Amendment rights.

278.     Defendant OFC. ROBERT WELLS is liable to Plaintiff BRIAN EISTER for arresting him without probable cause and in retaliation for his exercise of his First Amendment rights.

279.     Defendant OFC. VENE LAGON is liable to Plaintiff TRACEY JOHNSTONE for arresting her without probable cause and in retaliation for her exercise of her First Amendment rights.

280.     Defendant OFC. ANDRES SILVA is liable to Plaintiff JUSTINE MARK for arresting her without probable cause and in retaliation for her exercise of her First Amendment rights.

281.     Defendant LT. JAMES MCCOY is liable to Plaintiff JUSTINE MARK for causing her to be arrested without probable cause and in retaliation for her exercise of her First Amendment rights.

282.     Defendant LT. JAMES MCCOY is also liable to Plaintiff JUSTINE MARK for issuing an unconstitutional order demanding that she disperse from her peaceful, lawful protest, in violation of her First Amendment rights.

283.     Defendant LT. LARRY SCOTT is liable to liable to Plaintiffs HARRIS NTABAKOS, RODOLFO ROBERTS, ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for causing them to be arrested without probable cause and in retaliation for their exercise of her First Amendment rights.

284.    Defendant LT. LARRY SCOTT is also liable to Plaintiffs HARRIS NTABAKOS, RODOLFO ROBERTS, ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for issuing an unconstitutional order demanding that they disperse from their peaceful, lawful protest, in violation of their First Amendment rights.

285.    Defendant CAPT. ROBERT HALBLEIB is liable to liable to Plaintiffs ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for ordering their arrest without probable cause and in retaliation for their exercise of their First Amendment rights.

286.    Defendant OFC. MICHAEL MENTZER is liable to Plaintiff BARRY KNIGHT for arresting him without probable cause and in retaliation for his exercise of his First Amendment rights.

287.    Defendant OFC. OSCAR GARIBAY is liable to Plaintiff BRENNAN MCFARLANE, JR. for arresting him without probable cause and in retaliation for his exercise of his First Amendment rights.

288.    Defendant DISTRICT OF COLUMBIA is liable to all of the plaintiffs for maintaining an unconstitutional policy, custom, or practice of failing to adequately train and supervise MPD employees regarding the proper application of the Blocking Passage law.

289.    Defendant ERIC WALDT is liable to all of the plaintiffs for his deliberate indifference to the need to adequately train Defendants OFC. ROBERT WELLS, SGT. STEVE URPS, CAPT. ROBERT HALBLEIB, LT. PAUL NIEPLING, SGT. JOHNNY WALTER, OFC. TYRONE FREEMAN, OFC. STEPHEN FRANCHAK, SGT. JAMES SCHAEFER, OFC. WEN AI, OFC. VENE LAGON, OFC. ANDRES SILVA, OFC. MICHAEL MENTZER, OFC. OSCAR GARIBAY, CMDR. STEVEN SUND, CMDR.

MICHAEL REESE, CAPT. PAUL SHELTON, LT. JAMES MCCOY, and LT. LARRY SCOTT regarding the proper application of the Blocking Passage law.

290.     Defendant CMDR. STEVEN SUND is liable to Plaintiffs HARRIS NTABAKOS, RODOLFO ROBERTS, TIMOTHY PILAR, SAMUEL JEWLER, ANTONYA HUNTENBURG, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, JUSTINE MARK, and BARRY KNIGHT for his deliberate indifference to the need to adequately train and supervise Defendants OFC. ROBERT WELLS, SGT. STEVE URPS, CAPT. ROBERT HALBLEIB, LT. PAUL NIEPLING, SGT. JOHNNY WALTER, CAPT. PAUL SHELTON, OFC. TYRONE FREEMAN, OFC. STEPHEN FRANCHAK, SGT. JAMES SCHAEFER, OFC. WEN AI, OFC. VENE LAGON, OFC. ANDRES SILVA, and OFC. MICHAEL MENTZER.

291.     Defendant CMDR. MICHAEL REESE is liable to Plaintiff BRENNAN MCFARLANE, JR. for his deliberate indifference to the need to adequately train and supervise Defendant OFC. OSCAR GARIBAY.

292.     Defendant CMDR. STEVEN SUND is liable to all Plaintiffs for his deliberate indifference to the need to adequately train and supervise Defendant LT. LARRY SCOTT.

293.     Defendant CMDR. STEVEN SUND is liable to Plaintiff JUSTINE MARK for his deliberate indifference to the need to adequately train and supervise Defendant LT. JAMES MCCOY.

294.     All of the individually named defendants, except for those sued only in their official capacities, are liable to all of the plaintiffs as co-conspirators pursuing the same goal of illegally arresting the plaintiffs in retaliation for their exercise of their First Amendment rights.

295.    Defendants BANK OF AMERICA N.A., BANK OF AMERICA CORP., and THE JOHN AKRIDGE CO. are liable to all of the plaintiffs under the theory of respondeat superior.

296.    Defendant DISTRICT OF COLUMBIA is liable to all of the plaintiffs because the Blocking Passage law, as written and as applied to Plaintiffs' conduct, is an unconstitutional policy which violates Plaintiffs' First Amendment rights to freedom of speech and assembly.

297.    The Blocking Passage law is overbroad in that it prohibits a substantial amount of protected, expressive conduct.  Specifically, as the statute has been construed by the government, it amounts to an unconstitutional anti-loitering ordinance.

## COUNT V:
## VIOLATION OF THE FOURTH AMENDMENT (42 USC § 1983)
## (MONETARY DAMAGES)

298.    This Count realleges and incorporates by reference each of the preceding paragraphs.

299.    Defendant OFC. ROBERT WELLS is liable to Plaintiff HARRIS NTABAKOS for arresting him without probable cause.

300.    Defendant OFC. TYRONE FREEMAN is liable to Plaintiff RODOLFO ROBERTS for arresting him without probable cause.

301.    Defendant OFC. STEPHEN FRANCHAK is liable to Plaintiff TIMOTHY PILAR for arresting him without probable cause.

302.    Defendant SGT. STEVE URPS is liable to Plaintiff ANTONYA HUNTENBURG for ordering Ofc. Matthew Brinkley to arrest her without probable cause.

303.    Defendant SGT. STEVE URPS is liable to Plaintiff TIMOTHY PILAR for ordering Defendant OFC. STEPHEN FRANCHEK to arrest him without probable cause.

304.    Defendant SGT. STEVE URPS is liable to Plaintiff BARRY KNIGHT for ordering Defendant OFC. MICHAEL MENTZER to arrest him without probable cause.

305.    Defendant SGT. JAMES SCHAEFER is liable to Plaintiff SAMUEL JEWLER for arresting him without probable cause.

306.    Defendant OF. WEN AI is liable to Plaintiff MARSHALL SCOTT for arresting him without probable cause.

307.    Defendant OFC. ROBERT WELLS is liable to Plaintiff BRIAN EISTER for arresting him without probable cause.

308.    Defendant OFC. VENE LAGON is liable to Plaintiff TRACEY JOHNSTONE for arresting her without probable cause.

309.    Defendant OFC. ANDRES SILVA is liable to Plaintiff JUSTINE MARK for arresting her without probable cause.

310.    Defendant OFC. MICHAEL MENTZER is liable to Plaintiff BARRY KNIGHT for arresting him without probable cause.

311.    Defendant OFC. OSCAR GARIBAY is liable to Plaintiff BRENNAN MCFARLANE, JR. for arresting him without probable cause.

312.    Defendant LT. JAMES MCCOY is liable to Plaintiff JUSTINE MARK for causing her to be arrested without probable cause.

313.    Defendant LT. LARRY SCOTT is liable to liable to Plaintiffs HARRIS NTABAKOS, RODOLFO ROBERTS, ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for causing them to be arrested without probable cause.

314.     Defendant CAPT. ROBERT HALBLEIB is liable to liable to Plaintiffs ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for ordering their arrest without probable cause.

315.     All of the individually named defendants, except for those sued only in their official capacities, are liable to all of the plaintiffs as co-conspirators pursuing the same goal of illegally arresting the plaintiffs.

316.     Defendants BANK OF AMERICA N.A., BANK OF AMERICA CORP., and THE JOHN AKRIDGE CO. are liable to all of the plaintiffs under the theory of respondeat superior.

317.     Defendant DISTRICT OF COLUMBIA is liable to all of the plaintiffs for maintaining an unconstitutional policy, custom, or practice of failing to adequately train and supervise MPD employees regarding the proper application of the Blocking Passage law.

318.     Defendant ERIC WALDT is liable to all of the plaintiffs for his deliberate indifference to the need to adequately train Defendants OFC. ROBERT WELLS, SGT. STEVE URPS, CAPT. ROBERT HALBLEIB, LT. PAUL NIEPLING, SGT. JOHNNY WALTER, OFC. TYRONE FREEMAN, OFC. STREPHAN FRANCHAK, SGT. JAMES SCHAEFER, OF. WEN AI, OFC. VENE LAGON, OFC. ANDRES SILVA, OFC. MICHAEL MENTZER, OFC. OSCAR GARIBAY, CMDR. STEVEN SUND, CAPT. PAUL SHELTON, CMDR. MICHAEL REESE, LT. JAMES MCCOY, and LT. LARRY SCOTT regarding the proper application of the Blocking Passage law.

319.     Defendant CMDR. STEVEN SUND is liable to Plaintiffs HARRIS NTABAKOS, RODOLFO ROBERTS, TIMOTHY PILAR, SAMUEL JEWLER, ANTONYA HUNTENBURG, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, JUSTINE MARK, and BARRY KNIGHT for his deliberate indifference

to the need to adequately train and supervise Defendants OFC. ROBERT WELLS, SGT. STEVE URPS, CAPT. ROBERT HALBLEIB, LT. PAUL NIEPLING, SGT. JOHNNY WALTER, OFC. TYRONE FREEMAN, OFC. STEPHEN FRANCHAK, SGT. JAMES SCHAEFER, CAPT. PAUL SHELTON, OFC. WEN AI, OFC. VENE LAGON, OFC. ANDRES SILVA, and OFC. MICHAEL MENTZER.

320.    Defendant CMDR. MICHAEL REESE is liable to Plaintiff BRENNAN MCFARLANE, JR. for his deliberate indifference to the need to adequately train and supervise Defendant OFC. OSCAR GARIBAY.

321.    Defendant CMDR. STEVEN SUND is liable to all Plaintiffs for his deliberate indifference to the need to adequately train and supervise Defendant LT. LARRY SCOTT.

322.    Defendant CMDR. STEVEN SUND is liable to Plaintiff JESSE MARK for his deliberate indifference to the need to adequately train and supervise Defendant LT. JAMES MCCOY.

COUNT V:
VIOLATION OF THE FIFTH AMENDMENT – EQUAL PROTECTION
(42 USC § 1983)
(MONETARY DAMAGES)

323.    This Count realleges and incorporates by reference each of the preceding paragraphs.

324.    At the time of their arrests, each Plaintiff was a member of the "class" of sleepful protesters.

325.    The sleepful protesters, including Plaintiffs, were intentionally treated differently than others similarly situated by Defendants OFC. ROBERT WELLS, SGT. STEVE URPS, CAPT. ROBERT HALBLEIB, LT. PAUL NIEPLING, SGT. JOHNNY

WALTER, OFC. TYRONE FREEMAN, OFC. STEPHEN FRANCHAK, SGT. JAMES
SCHAEFER, CAPT. PAUL SHELTON, OFC. WEN AI, OFC. VENE LAGON, OFC.
ANDRES SILVA, OFC. MICHAEL MENTZER, OFC. OSCAR GARIBAY, CMDR.
STEVEN SUND, CMDR. MICHAEL REESE, LT. LARRY SCOTT, LT. JAMES
MCCOY, JOSEPH MASSEY, PHILIP J. MCGOVERN, KATLEEN MCKEON, and
JUDY OAKLEY, who arrested, ordered the arrest, conspired to arrest, and/or ordered the
dispersal of the sleepful protesters, including Plaintiffs.

326.    Defendants OFC. ROBERT WELLS, SGT. STEVE URPS, CAPT.
ROBERT HALBLEIB, LT. PAUL NIEPLING, SGT. JOHNNY WALTER, OFC.
TYRONE FREEMAN, OFC. STEPHEN FRANCHAK, SGT. JAMES SCHAEFER,
CAPT. PAUL SHELTON, OFC. WEN AI, OFC. VENE LAGON, OFC. ANDRES
SILVA, OFC. MICHAEL MENTZER, OFC. OSCAR GARIBAY, CMDR. STEVEN
SUND, CMDR. MICHAEL REESE, LT. LARRY SCOTT, LT. JAMES MCCOY,
JOSEPH MASSEY, PHILIP J. MCGOVERN, KATLEEN MCKEON, and JUDY
OAKLEY demanded and/or conspired to demand that the sleepful protesters, including
Plaintiffs, not sit on a public sidewalk, although neither the Blocking Passage law, nor
any other law, prohibits sitting on a sidewalk in such a manner that the sidewalk is not
blocked, absent special circumstances (e.g. an emergency, a crime scene, etc.)  Plaintiffs
were sitting on the sidewalk in such a manner that the sidewalk was not blocked and there
were no special circumstances which would make sitting on the sidewalk unlawful.

327.    Although innumerable individuals sit on sidewalks every day in the
District, such as individuals camping outside a store for a Black Friday sale or sitting in
line overnight to get tickets to a blockbuster movie, the Blocking Passage law is rarely, if
ever, applied in the manner that it was repeatedly applied to the sleepful protesters (i.e.,
to prohibit the mere act of sitting on a sidewalk.)

328.    There was no rational basis for treating the sleepful protesters, including Plaintiffs, different from others who sit on the District's sidewalk.  The application of the Blocking Passage law to the sleepful protesters, including Plaintiffs, who were not blocking passage, was irrational and arbitrary.

329.    In this "class of one"-type Equal Protection claim, Defendant DISTRICT OF COLUMBIA is liable without the need to meet the traditional standards for municipal liability.

330.    In the alternative, it may be inferred from the wide scope of the conspiracy and the number of different DISTRICT OF COLUMBIA employees involved that someone with final policymaking authority violated the plaintiffs' rights, thus creating liability for Defendant DISTRICT OF COLUMBIA.

331.    In the alternative, the repeated arrests over four days of numerous sleepful protesters demonstrates the existence of a policy, custom, or practice of treating sleepful protesters differently from others who sit on the sidewalk.


COUNT VI:
MUNICIPAL LIABILITY UNDER 42 USC § 1983 FOR
VIOLATION OF THE FIRST AND FOURTH AMENDMENTS
(MONETARY DAMAGES)

332.    This Count realleges and incorporates by reference each of the preceding paragraphs.

333.    Defendant DISTRICT OF COLUMBIA is liable to all of the plaintiffs because the Blocking Passage law, as written and as applied to Plaintiffs' conduct, is an unconstitutional policy which was the moving force behind the violation of Plaintiffs' First and Fourth Amendment rights.

## COUNT VII:
## VIOLATION OF THE FIRST AND FIFTH AMENDMENTS
## (DECLARATORY AND INJUNCTIVE RELIEF)

334.     This Count realleges and incorporates by reference each of the preceding

paragraphs.

335.     The Blocking Passage law is vague in that it does not place citizens on

notice as to what conduct is proscribed and vests too much discretion in law enforcement.

The law, as written and as applied to Plaintiffs' conduct, fails to articulate a standard for

how much of a sidewalk must be blocked to constitute a violation.  As a result, the statute

amounts to an unconstitutional anti-loitering ordinance.

336.     The Blocking Passage law is overbroad in that it prohibits a substantial

amount of protected First Amendment activity.

337.     Plaintiffs are entitled to a declaration that the Blocking Passage law

violates their First and Fifth Amendment rights and an injunction against Defendants

CHIEF CATHY LANIER, IRVIN NATHAN, and the DISTRICT OF COLUMBIA

prohibiting all enforcement of the law, or in the alternative, prohibiting misapplication of

the law.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:


(1) Declare Defendants' conduct to be unlawful;

(2) Declare the Blocking Passage law, on its face, to be a violation of the First and

    Fifth Amendments;

(3) Declare, alternatively, that the DISTRICT OF COLUMBIA has engaged in

widespread misapplication of the Blocking Passage law;

(4) Enjoin all enforcement of the Blocking Passage law;

(5) Enjoin, alternatively, misapplication of the Blocking Passage law;

(6) Order the destruction of all records of Plaintiffs' illegal arrests;

(7) Award Plaintiff compensatory and punitive damages in an amount to be

determined at trial;

(8) Grant Plaintiff an award of attorney fees and other litigation costs reasonably

incurred in this action;

(9) Grant Plaintiff such other and further relief which the Court deems proper.


## JURY TRIAL

Plaintiff demands a jury trial for all issues that may be tried by jury.



Respectfully Submitted,


   /s/ Jeffrey Light

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com

*Counsel for Plaintiffs*