UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**SAMUEL JEWLER**, *et al.*,            )
                                        )
         **Plaintiffs,**                )
                                        )
**v.**                                  )         **Case No. 1:12-cv-1843 (RWR)**
                                        )
**DISTRICT OF COLUMBIA**, *et al.*,     )
                                        )
         **Defendants.**                )
_____)

## BANK OF AMERICA, N.A. AND JOSEPH MASSEY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Pursuant to Rules 7 and 12(b)(6) of the Federal Rules of Civil Procedure, and Local Civil Rule 7, Defendant Bank of America, N.A. ("Bank of America") and Joseph Massey ("Massey") (collectively "Bank Defendants") move this Court to dismiss the claims asserted against them in Plaintiffs' First Amended Complaint ("Amended Complaint") (Dkt. No. 16) filed on December 7, 2012. As set forth more fully below, Plaintiffs' claims fail to state a claim against the Bank Defendants, and therefore the Court should grant the Motion to Dismiss and dismiss the Bank Defendants from this case.

## I.    INTRODUCTION

It is apparent from the skeletal allegations in the Complaint that Plaintiffs wholly fail to support their claim that the Bank Defendants conspired to illegally arrest Plaintiffs and to violate Plaintiffs' constitutional rights. Instead, the allegations illustrate Plaintiffs' improper attempt to sweep the Bank Defendants into their challenge to the constitutionality of the District of

1

Columbia Blocking Passage Law, D.C. Code § 22-1307 ("Blocking Passage Law").[1]  Even

assuming that the allegations are true, and enforcing the Blocking Passage Law did violate

Plaintiffs' constitutional rights, the Bank Defendants did not participate in any such purported

conspiracy to violate Plaintiffs' rights.  Plaintiffs' attempt to convince this Court otherwise can

succeed only if the Court ignores the Supreme Court's dictate that a properly-alleged conspiracy

identifies actions that constitute more than just parallel conduct.  The law requires Plaintiffs to

allege a conspiracy that is plausible.  Plaintiffs' trumped up conspiracy-theory allegations do not

meet that standard.  Instead, Plaintiffs attempt to portray innocent behavior – namely a bank

corporate security officer's meeting with local law enforcement to discuss ongoing protests in

order to ensure the security of the banking center as well as the safety of bank customers - as

some sophisticated conspiracy, suffers from fatal, self-sealing logic.  Furthermore, Plaintiffs'

failure to allege any theory of direct liability against the Bank Defendants is fatal to their claims.

As discussed in more detail below, the Court should grant the Motion to Dismiss.

## II.    FACTUAL ALLEGATIONS[2]

Eleven individual Plaintiffs filed this action against twenty-nine defendants, most of

whom are officers or sergeants with the District of Columbia Metropolitan Police Department

("MPD").  Plaintiffs are members of Occupy DC, which is part of the larger Occupy movement

that commenced with Occupy Wall Street in Manhattan's Financial District on September 17,

2011.  (Am. Compl. ¶¶ 45-46.)  On or about April 4, 2012, members of Occupy DC began daily

protests in front of the Bank of America branch located at 1090 Vermont Ave., NW,

Washington, D.C.  (Am. Compl. ¶ 49.)  The Amended Complaint describes the protest as a

---

[1] Bank Defendants incorporate by reference the arguments set forth in the forthcoming Motion to Dismiss and
Memorandum in Support of the Motion to Dismiss filed by the District of Columbia which explains why the
Blocking Passage Law is constitutional.
[2] This section consists of Plaintiffs' allegations in the Amended Complaint, which are treated as true solely for
purposes of this Motion.

"sleepful protest" because some participants slept on the sidewalk outside of the bank overnight and/or remained in sleeping bags during the day. (Am. Compl. ¶ 54.) Plaintiffs attest that this was in part symbolic and in part facilitative of other speech activities; however, Plaintiffs were not sleeping or attempting to sleep at the time they were arrested. (Am. Compl. ¶¶ 55, 59.)

Massey is a retired MPD officer and he is currently employed by Bank of America as a corporate security officer. (Am. Compl. ¶¶ 72, 75.) Plaintiffs allege upon information and belief that in early April 2012, Massey spoke to Defendant Lt. Larry Scott at the MPD regarding the protesters located in front of the Bank of America. (Am. Compl. ¶¶ 76, 77.) Plaintiffs claim that Massey and Lt. Larry Scott discussed plans to have the protesters illegally arrested. (Am. Compl. ¶ 77.) The sole rationale behind Massey's purported plan to have the protesters illegally arrested, according to Plaintiffs, is that the sidewalk demonstration was "embarrassing" to Bank of America. (Am. Compl. ¶ 80.) After the alleged meeting between Massey and Lt. Larry Scott, Plaintiffs claim that Lt. Larry Scott spoke with his superiors and attorneys from the District of Columbia Office of the Attorney General about illegally arresting the protesters. (Am. Compl. ¶¶ 81, 83.) However, Plaintiffs claim that attorneys from the District of Columbia Office of the Attorney General advised Lt. Larry Scott that D.C.'s Blocking Passage Law could be properly applied to arrest protesters who were blocking a sidewalk simply by sitting on the ground, no matter how small a percentage of the sidewalk they took up or how much space pedestrians had to maneuver around them. (Am. Compl. ¶ 83.) In other words, D.C.'s Blocking Passage Law authorized Plaintiffs' arrest. (Am. Compl. ¶ 83.)

Plaintiffs allege that on April 10, 2012, Lt. Larry Scott, Joseph Massey, and Phillip McGovern held a meeting to discuss the protests. (Am. Compl. ¶ 84.) It is at this meeting that Plaintiffs claim that the conspiracy transpired. (Am. Compl. ¶ 85.) Namely, Plaintiffs allege that

Phillip McGovern, Lt. Larry Scott, and Joseph Massey conspired to violate Plaintiffs' constitutional rights by (1) agreeing to have Lt. Larry Scott give a dispersal order and (2) arresting any protesters that did not leave.  (Am. Compl. ¶ 85.)  Following the meeting, Lt. Larry Scott gave the protesters an order to disperse and arrested the protesters who did not leave over the next three days.  (Am. Compl. ¶ 86.)

## III.   STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  While the Court must assume the truth of the Complaint's factual allegations, those allegations "must be enough to raise a right to relief *above the speculative level*."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) (emphasis added).  A plaintiff's obligation to "provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citations omitted).  This requirement has teeth.  In *Ashcroft v. Iqbal*, the Supreme Court held that Federal Rule of Civil Procedure 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

In *Iqbal,* a Muslim Pakistani pretrial detainee sued various government officials, alleging they violated his constitutional rights.  Among the allegations he made were that the Department of Justice

> knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement "as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest."  The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, and that Mueller was "instrumental" in adopting and executing it.

*Id*. at 680, 129 S. Ct. at 1951 (citations omitted).  The Supreme Court found these allegations insufficient:

> These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, namely, that petitioners adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." As such, the allegations are conclusory and not entitled to be assumed true.

*Id.* (citations omitted).  The Court then provided this guidance on motions to dismiss:

> A court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 664, 129 S. Ct. at 1940-41; *see also Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008) ("[T]he complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face") (quoting *Twombly,* 550 U.S. at 570, 127 S. Ct. at 1974); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]e need not accept as true unwarranted inferences, unreasonable conclusions, or arguments").

## IV.    ARGUMENT

Plaintiffs' Complaint alleges seven causes of action against the defendants.  Plaintiffs sued the Bank Defendants for (Count I) False Arrest and False Imprisonment, (Count II) Abuse of Process, (Count IV) Violation of First Amendment Pursuant to § 1983, and (Count V) Violation of the Fourth Amendment.  Plaintiffs sued Massey for (Count V[sic]) Violation of the Fifth Amendment pursuant to § 1983.  All of Plaintiffs' claims against the Bank Defendants should be dismissed for failure to state a claim upon which relief can be granted.

**A.    All Claims Alleged Against the Bank Defendants Fail to State a Claim and Should be Dismissed (Counts I, II, IV, V, V[sic])**

**1.    The Amended Complaint is Replete with Conclusory Allegations**

Despite the Supreme Court's admonitions about relying upon conclusory allegations, Plaintiffs rely solely upon conclusory allegations in the Amended Complaint to attempt to fill in critical details in their conspiracy theory underlying all claims asserted against the Bank Defendants.  Plaintiffs further failed to allege the requisite elements to support a conspiracy claim against the Bank Defendants.

"Mere conclusory pleadings that the parties agreed and conspired to deprive plaintiff of his constitutional rights are insufficient to state a cause of action for conspiracy."  *Knowlton v. United States*, 111 F. Supp. 2d 1 (D. D.C. 1999) (citations omitted); *see also Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  "[I]n order to plead a conspiracy, plaintiff must allege facts that would support a conclusion that defendants actually possessed the same motives or objective." *Id.*  (citations omitted).  "Conclusory assertions will not suffice." *Id.* (citations omitted).    In support of their purported conspiracy theory, Plaintiffs make the following allegations concerning the Bank Defendants:

- "On information and belief, in early April 2012, Defendant JOSEPH MASSEY spoke to Defendant LT. LARRY SCOTT about the protesters in front of Bank of America's offices at 1090 Vermont Ave., N.W.

- "On information and belief, during the conversation between Defendant JOSEPH MASSEY and Defendant LT. LARRY SCOTT, the two discussed plans to have the protesters illegally arrested.

- "Nevertheless, on information and belief, Defendant JOSEPH MASSEY sought the assistance of LT. LARRY SCOTT to have protesters arrested because the sidewalk demonstration was embarrassing to Defendants BANK OF AMERICA, N.A. and BANK OF AMERICA, CORP.

(Am. Compl. ¶¶ 76-77, 80.)  These conclusory allegations, pleaded upon information and belief, form the entirety of Plaintiffs' faulty conspiracy theory and – alone – form the entire basis for all claims brought against the Bank Defendants.  There are no well-pleaded factual allegations that speak to how Plaintiffs would be "illegally" arrested.  These bare allegations ring hollow and are insufficient to state a claim against the Bank Defendants, and therefore the Bank Defendants should be dismissed.

> ### 2. Plaintiffs Failed to Allege Necessary Elements to State a Conspiracy Claim Against the Bank Defendants

The Amended Complaint lacks well-pleaded factual allegations necessary to state a conspiracy-based claim against the Bank Defendants.  Specifically, Plaintiffs failed to allege a meeting of the minds and Plaintiffs also failed to allege an unlawful purpose.

To state a civil conspiracy claim, a plaintiff must allege:  (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.  *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).  "In order to establish a conspiracy, plaintiff must allege facts showing the existence of an agreement or "meeting of the minds," between defendants to violate plaintiffs' civil rights."  *Knowlton*, 111 F. Supp. 2d at 18.  *See also Graves v. United States*, 961 F. Supp. 314, 320 (D. D.C. 1997) (stating that a ""meeting of the minds' is an essential element of a conspiracy claim") (citation omitted).  "Mere conclusory pleadings that the parties agreed and conspired to deprive" the plaintiff of his constitutional rights is insufficient to state a conspiracy claim.  *Moss v. Perkins*, 682 F. Supp. 395, 396 (N.D. Ill. 1988).  Further, "[p]ure legal impossibility is always a defense" to a finding of conspiracy.  *In re Sealed Case*, 223 F.3d 775, 779 (D.C. Cir. 2000).

In addition to the utter absence of well pleaded facts to support the purported conspiracy theory, Plaintiffs failed to allege any facts that would suggest that Lt. Larry Scott and Massey had a meeting of the minds to accomplish an unlawful purpose.  The only facts that Plaintiffs allege regarding a conspiracy with the Defendant Banks is that Massey met with Lt. Larry Scott in early April 2012 and "discussed plans to have the protesters illegally arrested" because the demonstration was "embarrassing" to Massey's employer and that sometime thereafter Plaintiffs were in fact arrested.  (Am. Compl. ¶¶ 76-77, 80.)  The Complaint does not allege any facts supporting the details of an agreement to have Plaintiffs arrested, nor does it even allege that an agreement was reached.  There is also no allegation that the Bank Defendants intended to deprive Plaintiffs of their constitutional rights  – only that the bank was "embarrassed" about the protesters.  This is insufficient to state a claim for conspiracy.  *See Sculimbrene v. Reno*, 158 F. Supp. 2d 8, 16 (D. D.C. 2001) (dismissing plaintiff's conspiracy claim because the complaint did not "specifically allege the existence of an 'agreement.' . . . [but rather] describes circumstances which involve communication between the individual defendants and alleges that the result of these communication was to discredit and defame Plaintiff").  Furthermore, Plaintiffs' allegation that Massey, a retired MPD officer, worked with Lt. Larry Scott as part of the MPD's SWAT team before he retired is entirely insufficient for this Court to infer a meeting of the minds.  (Am. Compl. ¶¶ 72-74.)  In fact, this Court has relied upon numerous cases that refused to "infer a meeting of the minds between two alleged conspirators on the basis that the two worked in the same police department."  *Knowlton*, 111 F. Supp. 2d at 24 (citations omitted) (quoting *Moss*, 682 F. Supp. at 396 ("finding that a conspiracy cannot be inferred based only on the facts that two police offers were partners, both were present during the alleged incident, and that one failed to intervene as the other assaulted the plaintiff")).  Plaintiffs have failed to allege any facts that

8

would suggest that Lt. Larry Scott and Massey had a meeting of the minds to violate Plaintiffs' constitutional rights.

In fact, the allegations in the Amended Complaint actually undercut Plaintiffs' conspiracy theory.  Specifically, Plaintiffs allege that following his meeting with Massey, Lt. Larry Scott discussed the protestors with his superiors and attorneys from the District of Columbia Office of the Attorney General and he was advised that the Blocking Passage Law authorized Plaintiffs' arrests if they did not disburse after receiving a disbursal order from the MPD.  In other words, even if Lt. Larry Scott and Massey did agree to arrest Plaintiffs – which is entirely implausible, as discussed below – their purported agreement did not have an unlawful or illegal purpose.  In *In re Sealed Case*, the court stated that "a hunter cannot be convicted of attempting to shoot a deer if the law does not prohibit shooting a deer in the first place."  *In re Sealed Case*, 223 F.3d at 779.  "Obviously a charge of conspiracy to shoot a deer would be equally untenable."  *Id.*

Following the same logic in this case, Plaintiffs' purported conspiracy theory fails because there was no unlawful objective of the conspiracy.[3]  The Blocking Passage Law authorized Plaintiffs' arrests provided that Plaintiffs failed to disburse after an order to do so.  Plaintiffs acknowledge this in the Amended Complaint.  (Am. Comp. ¶ 83.)  The District of Columbia Office of Attorney General informed Lt. Larry Scott that the Blocking Passage Law authorized the arrests.  (Am. Compl. ¶ 83.)   Plaintiffs allege that they were ordered to disburse and failed to do so.  (Am. Compl. ¶¶ 94, 103, 117, 124, 146, 148, 169.)  There can be no conspiracy because the conspiracy, according to Plaintiffs, "consisted of an agreement to have Lt. Larry Scott give a dispersal order and then have his offers arrest any protesters that did not leave," which is supported by the Blocking Passage law.

---

[3] Discussed below are the reasons that Plaintiffs' underlying tort claims are not viable and should be dismissed.

### 3.  Plaintiffs' Conspiracy Theory is Implausible

Plaintiffs' conspiracy theory is entirely implausible, and therefore all claims alleged against the Bank Defendants which are all founded upon the purported conspiracy should be dismissed.

To state a claim for civil conspiracy, a plaintiff must allege facts that support "an agreement to take part in an unlawful action or a lawful action in an unlawful manner, and an overt tortious act in furtherance of the agreement that causes injury." *Halberstam*, 705 F.2d at 479.  There is nothing sinister about a corporate security officer fulfilling his job responsibilities by meeting with the police department regarding ongoing protesters located in front his employer's banking center to ensure the safety of the banking center and its customers.  The sole motivation Plaintiffs allege behind the purported conspiracy is that Bank of America was "embarrassed" by the protests.  (Am. Compl. ¶ 80.)  The inference suggested by Plaintiffs, that Massey entered into a conspiracy with his former colleague to save Bank of America from embarrassment, is entirely implausible.

In *Twombly*, the Supreme Court held that to survive a motion to dismiss "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. 544, 556.  "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.*  "In identifying facts that are suggestive enough to render a . . . conspiracy plausible, we have the benefit of the prior rulings and considered views of leading commentators . . . that lawful parallel conduct fails to bespeak unlawful agreement." *Id.*  "It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not

suffice." *Id.* "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* "Hence, when allegations of parallel conduct are set out in order to make a . . . claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.*

Far from supporting any inference of conspiracy, the allegation that Massey met with Lt. Larry Scott is consistent with parallel conduct. In fact, Plaintiffs acknowledge that Massey is Bank of America's corporate security officer. (Am. Compl. ¶ 36.) Of course Massey's duties as a corporate security officer involve meeting with local law enforcement when there are ongoing protests outside of Bank of America banking centers. This is absolutely necessary to ensure the safety and security of the banking center as well as the safety and security of Bank of America customers. The allegations in the Amended Complaint fail to state a plausible conspiracy claim against the Bank Defendants.

In *Twombly*, the Supreme Court held that "the complaint leaves no doubt that the plaintiffs rest their § 1 claim on descriptions of parallel conduct and not on any independent allegation of actual agreement . . ." *Id.* Further, "[a]lthough in form a few stray statements speak directly of agreement, on fair reading these are merely legal conclusions resting on the prior allegations." *Id.* Just as the Supreme Court granted the motion to dismiss in *Twombly*, so too should the Court in this case.

**B.     Plaintiffs § 1983 Claims Against the Bank Defendants Fail to State a Claim (Counts IV, V, and V[sic])**

There are no allegations in the Amended Complaint that suggest that Massey was acting under color of state law, a necessary element to state a § 1983 claim against him, nor can

Plaintiffs meet the requirements of a 'class of one' claim.  These claims should accordingly be dismissed.

"Claims brought under § 1983 require the violation of a right secured by the Constitution and laws of the United States by a person acting under color of state law."  *G'Sell v. Carven*, 724 F. Supp. 2d 101, 111 (D. D.C. 2010).  "[W]hether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties."  *Id.*  "The key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law."  *Id.*  "An officer does not act under color of law if the challenged conduct is not related in some meaningful way either to the officer's governmental status or to the performance of his duties."  *Id.* (citations omitted).  "One cannot misuse power that one does not possess."  *Id.* (citations and quotations omitted).  "There are two essential elements to a 'class of one' equal protection claim:  (1) disparate treatment of similarly situated parties (2) no rational basis."  *Quezada v. Marshall*, 2013 WL 151489, at *5 (D. D.C. Jan. 15, 2013) (dismissing equal protection claim for failure to state a claim upon which relief can be granted).

The Amended Complaint is devoid of allegations that would suggest that Massey was acting under color of state law – a necessary element of a § 1983 claim.  *See Nader v. McAuliffe*, 593 F. Supp. 2d 95, 101 (D. D.C. 2009) ("[A] *§ 1983* claim brought against a private party cannot survive a motion to dismiss if the plaintiff fails to allege that the defendant was engaged in state action or acted under color of state law") (citing *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991)).  Plaintiffs do not allege that Massey was wearing a police uniform or carrying a gun. (*See* Am. Compl.)  Plaintiffs do not allege that Massey gave any orders to the Plaintiffs to

disperse.  (*See* Am. Compl.)    Plaintiffs do not allege that Massey took them into custody.  (*See* Am. Compl.)  In fact, Plaintiffs allege that Massey is a *retired* MPD officer and merely lump Massey in with the MPD defendants "who arrested, ordered the arrest, conspired to arrest, and/or ordered the dispersal" of Plaintiffs.  (Am. Compl. ¶¶ 72, 325.)  Plaintiffs allege that Massey is an agent of Bank of America – not an agent of the government.  (Am. Compl. ¶ 75.)  Plaintiffs failed to make any allegations that would suggest that Massey was acting under color of state law.  In *G'Sell*, the plaintiffs alleged that the defendant identified himself as a police officer to intimidate plaintiffs and to use his authority as a police officer to intimidate them and to further the assault.  *G'Sell*, 724 F. Supp. 2d at 111.  Such allegations were sufficient to survive a motion to dismiss in *G'Sell*; however, no such allegations pertaining to Massey appear in the Amended Complaint.

Furthermore, Plaintiffs 'class of one' equal protection claim as it pertains to the Bank Defendants fails because Plaintiffs failed to allege, other than in conclusory fashion, that the Bank Defendants treated Plaintiffs differently from others.  Instead, Plaintiffs' allegations are regarding people camping out on sidewalks for a black Friday sale or standing in line to get movie tickets.  (Am. Compl. ¶ 327.)  This does not have anything to do with the Bank Defendants because, yet again, the Bank Defendants have been improperly swept in with Plaintiffs' challenge to the Blocking Passage Law.  Taken as a whole, the allegations in the Amended Complaint show that Massey, a corporate security officer for Bank of America, contacted the MPD when it came to his attention that there were protesters located in front of the local banking center.  It is not out of the ordinary for businesses to work with the local police to ensure that its business and customers are kept safe during protests.  However, Plaintiffs' failure

to allege that the Bank Defendants treated Plaintiffs any differently than others is fatal to this claim.

Plaintiffs' failure to allege facts that would suggest that Massey was acting under color of state law and their failure to establish a 'class of one' is dispositive of these claims. Accordingly, the Court should grant the Motion to Dismiss.

### C.      Plaintiffs' Claims Under § 1983 Against Bank of America Fail to State a Claim and Should be Dismissed (Counts IV, V)

As discussed above, there are no allegations that suggest that Massey, the only Bank of America employee named in the Amended Complaint, was acting under color of law, which is a necessary element of a § 1983 claim.  Plaintiffs' claims against Bank of America alleging violation of Plaintiffs' First and Fourth Amendment rights pursuant to § 1983 should be dismissed for an additional reason.  Namely, Plaintiffs failed to identify any official bank policy that caused Plaintiffs to suffer the purported constitutional violation and a Section 1983 claim cannot be made upon a theory of vicarious liability or *respondeat superior*.

"Private employers are not liable under § 1983 for the constitutional torts of their employees . . . unless the plaintiff proves that action pursuant to official policy of some nature caused a constitutional tort."  *Maniaci v. Georgetown University,* 510 F. Supp. 2d 50, 63 (D. D.C. 2007) (citations omitted).  *See also Rojas v. Alexander's Dept. Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (finding that Plaintiff could not recover under § 1983 because he failed to show a discriminatory company policy); *Iskander v. Village of Forest Park*, 690 F.2d 126, 129 (7th Cir. 1982) (holding that failure to identify an unconstitutional policy or custom was fatal to plaintiff's claim); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) (affirming holding that respondeat superior could not be invoked under § 1983 without a showing that the defendant "caused" the deprivation of the plaintiff's rights); *Grissom v. Dist. Of Columbia*, 853

F. Supp. 2d 118, 124 (D.D.C. 2012) ("[J]ust as the District can only be held liable under § 1983 for its own actions and not under a *respondeat superior* theory, so to can AlliedBarton only be held liable for constitutional violations affirmatively precipitated by its policy or practice").  "A Section 1983 claim cannot be made on a theory of vicarious liability or *respondeat superior*." *Maniaci*, 510 F. Supp. 2d at 65.

Plaintiffs' Complaint purports to bring a Section 1983 claim against Bank of America alleging that it violated Plaintiffs' First and Fourth Amendment rights "under a theory of respondeat superior."  (Am. Compl. ¶¶ 295, 316.)  However, private employers like Bank of America cannot be liable under Section 1983 based upon a theory of *respondeat superior*.  *Id.* Instead, a plaintiff must identify an official policy that caused the purported constitutional violation.  In this case, the Amended Complaint is entirely devoid of any such identifiable policy. Instead, the allegations in the Amended Complaint make clear that the only policy with which Plaintiffs take issue is D.C.'s Blocking Passage Law, and not any Bank of America policy.  (*See* Am. Compl.)  Because Plaintiffs have failed to identify any official Bank of America policy for which they contend their First and Fourth Amendment rights have been violated and because Plaintiffs cannot assert a Section 1983 claim based upon a theory of *respondeat superior*, the Court should grant the Motion to Dismiss.

### D.      Plaintiffs Failed to State a Claim Against the Bank Defendants for Abuse of Process (Count II)

Plaintiffs' abuse of process claim against the Bank Defendants fails to state a claim and should be dismissed.

To state a claim for abuse of process the Plaintiff must allege:  "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge."  *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868

(D.C. Ct. App. 1959).  Stated differently, the allegations in the Complaint must establish that "process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do."  *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. Ct. App. 1980) (citation omitted).  "The critical concern in abuse of process cases is whether process was used to accomplish an end unintended by law, and whether the suit was instituted to achieve a result not regularly or legally obtainable."  *Id.*

"The mere issuance of the process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in the improper use after issuance." *Id.*  "Thus, in addition to ulterior motive, one must allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge." *Id.  See also Jacobson v. Thrifty Paper Boxes, Inc.*, 230 A.2d 710, 711 (D.C. Ct. App. 1967) (upholding dismissal of plaintiff's abuse of process claim); *Nolan v. Allstate Home Equip. Co.*, 149 A.2d 426, 430 (D.C. Mun. Ct. App. 1959) (affirming dismissal of abuse of process claim).

Entirely absent from the Amended Complaint are any well-pleaded factual allegations that would suggest that the Bank Defendants participated in or conspired to undertake a "perversion" of judicial process.  Plaintiffs' hollow conspiracy theory that Bank of America was "embarrassed" by the protestors is insufficient to establish the existence of any ulterior motive on the part of the Bank Defendants necessary to state an abuse of process claim.  Furthermore, there are no factual allegations, other than insufficient conclusory allegations, that suggest that the Bank Defendants instituted any use of process against Plaintiffs.  Instead, the allegations in the Amended Complaint make clear that the Attorney General of the District of Columbia (not the

Bank Defendants) separately instructed Lt. Larry Scott that the Blocking Passage Law could "be properly applied to arrest protesters."  (Am. Compl. ¶ 83.).  It follows that such application of the Blocking Passage Law is in conformity with D.C. law and does not constitute an abuse of process.  Plaintiffs failed to state a claim for abuse of process against the Bank Defendants, and therefore the Court should grant the Motion to Dismiss.

> **E.**     **Plaintiffs Failed to State a Claim Against the Bank Defendants for False Arrest/False Imprisonment (Count I)**

The Plaintiffs failed to plead facts that would support a claim for false arrest or false imprisonment against the Bank Defendants.

"Liability is incurred for the procuring of a false arrest and imprisonment if by acts or words, one directs, requests, invites, or encourages unlawful detention of another."  *Smith v. District of Columbia*, 399 A.2d 213, 218 (D.C. Ct. App. 1979).  "It is settled that merely giving facts to an officer showing that an offense has been committed and that a person may be suspected of its commission does not compromise the tort of false imprisonment."  *Id.*  "More needs to be shown."  *Id.*  "To accuse a person of committing a crime, however slanderous it may be, is not enough to sustain a claim of false arrest so long as the decision whether to make the arrest remains with the police officer and is without the persuasion or influence of the accuser."  *Id.*

The extent of Plaintiffs' allegations pertaining to their claim for false arrest and false imprisonment is that Massey "sought the assistance of Lt. Larry Scott to have the protesters arrested."  (Am. Compl. ¶ 80.)  This allegation is entirely conclusory, self-serving, does not meet the requirements of *Twombly* and *Iqbal*, and cannot support a claim for false arrest and false imprisonment.  Furthermore, the Amended Complaint alleges that Lt. Larry Scott made the decision to arrest Plaintiffs following his meeting with the Attorney General for the District of

Columbia, and after being informed that the Blocking Passage Law authorized Plaintiffs' arrest. (Am. Compl. ¶ 83.)  Because, as Plaintiffs allege, the Blocking Passage Law authorized their arrest, there cannot be a claim for false arrest or false imprisonment when the arrest was conducted according to law.  Lastly, there are no allegations in the Amended Complaint that suggest that the arrests were not of the MPD's own volition.  For all of these reasons, Plaintiffs failed to state a claim for false imprisonment and false arrest against the Bank Defendants.[4] Therefore, the Court should grant the Motion to Dismiss.

### F.    The Amended Complaint Lacks Allegations to Support the Claim for Punitive Damages

The Amended Complaint contains no factual allegations that would support an award of punitive damages against the Bank Defendants.

"Punitive damages may be awarded for conduct that is willful and outrageous, exhibits reckless disregard for the rights of others, or is aggravated by evil motive, actual malice, or deliberate violence or oppression."  *Cambridge holdings Group, Inc. v. Federal Ins. Co.*, 357 f. Supp. 2d 89, 97 (D. D.C. 2004); *Mazur v. Szporer*, 2004 U.S. Dist. LEXIS 13176, at *19 n.5 (D. D.C. June 1, 2004) (dismissing claim for punitive damages due to failure to allege any facts supporting conclusory assertions).

There are no allegations in the Amended Complaint that suggest that the Bank Defendants engaged in willful and outrageous behavior.  In fact, the extent of the actions alleged on the part of the Bank Defendants is that Massey allegedly participated in several meetings with Lt. Larry Scott of the MDP after the Occupy protesters began their "sleepful" protest in front of

---

[4] A corollary to this situation is the bystander liability theory, which applies to police officers who do not  participate in an unlawful arrest.  "Under the bystander theory of liability an officer is held responsible for a constitutional violation if he:  (1) knows that a fellow officer is violating an individual's constitutional right; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  *Mazloum v. District of Columbia*, 442 F. Supp. 2d 1, 7 (D. D.C. 2006).  Even if Massey was a police officer – which he is not - none of these elements have been pleaded. If Massey could not be found to have falsely imprisoned Plaintiffs as a police officer, it makes no sense that he could falsely imprison them as a citizen.

Bank of America's banking center.  (Am. Compl. ¶¶ 76, 84.)  This is insufficient to support an award of punitive damages.  Plaintiffs also allege that the Bank Defendants were "embarrassed" by Plaintiffs protesting in front of the banking center; however, that is the only allegation pertaining to the Bank Defendants' behavior, and it is entirely insufficient to support a claim for punitive damages.

As in *Mazur*, where the Court granted the motion to dismiss the claim for punitive damages based upon the plaintiffs failure to allege facts in support thereof, so should the Court in this case.

## V.  CONCLUSION

For the foregoing reasons, the Court should grant the Motion to Dismiss and dismiss all claims asserted against the Bank Defendants with prejudice.

## VI.  ORAL ARGUMENT REQUESTED

The Bank Defendants ask the Court to consider scheduling oral argument on the issues presented by this motion.  The Bank Defendants would like the opportunity to address directly any questions that the Court may have, to the extent that the parties' briefs do not fully respond to any specific issues.

Dated: February 28, 2013        Respectfully Submitted,

McGuireWoods LLP

/s/Jodie N. Herrmann
Robert A. Muckenfuss (*pro hac vice application pending*)
Jodie N. Herrmann (DC Bar # 988865)
201 N. Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone:  704-343-2329
Facsimile:  704-444-8785
rmuckenfuss@mcguirewoods.com
jherrmann@mcguirewoods.com

Anand Ramana (D.C. Bar No. 489478)
2001 K Street N.W., Suite 400
Washington DC 20006-1040
Telephone: 202.857.1734
Facsimile: 202.828.2973
aramana@mcguirewoods.com

*Attorneys for Bank of America, N.A., Bank of America Corporation, and Joseph Massey*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of February, 2013, I caused the foregoing **BANK OF AMERICA, N.A. AND JOSEPH MASSEY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** to be filed with the Clerk of the U.S. District Court for the District of Columbia using the Court's ECF, which will electronically serve copies of the same on counsel for all parties.


/s/Jodie N. Herrmann_____