SAMUEL JEWLER,                            )
BRENNAN MCFARLANE, JR.,                   )
ANTONYA HUNTENBURG,                       )        Case No. 1:12-cv-1843 (PLF)
BARRY KNIGHT,                             )
TIMOTHY PILAR,                            )
MARSHALL SCOTT,                           )        **JURY TRIAL DEMANDED**
BRIAN EISTER,                             )
TRACEY JOHNSTONE,                         )
JUSTINE MARK,                             )
HARRIS NTABAKOS,                          )
RODOLFO ROBERTS,                          )
                                          )
          PLAINTIFFS                      )
     vs.                                  )
                                          )
DISTRICT OF COLUMBIA,                     )
                                          )
     and                                  )
                                          )
SGT. JAMES SCHAEFER (#S777),              )
OFC. WEN AI (#4412),                      )
OFC. ROBERT WELLS (#3303),                )
OFC. VENE LAGON (#3187),                  )
OFC. ANDRES SILVA (#3881),                )
OFC. MICHAEL MENTZER (#3017),             )
OFC. OSCAR GARIBAY (#2739),               )
OFC. STEPHEN FRANCHAK (#3123),            )
SGT. STEVE URPS (#495),                   )
OFC. TYRONE FREEMAN (#4557), a/k/a        )
TYRONE EVANS-FREEMAN,                     )
LT. PAUL NIEPLING,                        )
CAPT. ROBERT HALBLEIB,                    )
SGT. JOHNNIE WALTER,                      )
LT. LARRY SCOTT (#164),                   )
LT. JAMES MCCOY,                          )
*in their individual capacities*,         )
                                          )
          DEFENDANTS[1]                   )

---

[1] The Bank of America and Akridge Defendants have been removed as defendants from this First Amended Complaint because the Court granted their previous motion to dismiss with prejudice. By removing these defendants, Plaintiffs do not intend to waive their appeal rights.

## SECOND AMENDED COMPLAINT[2]

### THE PARTIES

1.      Plaintiffs are individuals who were arrested in April 2012 while participating in a protest in front of a Bank of America branch in Washington, D.C.

2.      The Metropolitan Police Department is an agency of Defendant DISTRICT OF COLUMBIA, which is a municipal corporation.

3.      Defendant SGT. JAMES SCHAEFER is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, SGT. JAMES SCHAEFER was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  SGT. JAMES SCHAEFER is sued in his individual capacity.

4.      Defendant OFC. WEN AI is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, OFC. WEN AI was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  OFC. WEN AI is sued in his individual capacity.

5.      Defendant OFC. ROBERT WELLS is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, OFC. ROBERT WELLS was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  OFC. ROBERT WELLS is sued in his individual capacity.

---

[2] Leave of Court to file this second amended complaint was granted on June 21, 2016. [ECF: dkt. 85] ("[P]laintiffs may amend their pleadings in accordance with FRCP 15 on or before July 15, 2016[.]")

6.     Defendant OFC. VENE LAGON is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, OFC. VENE LAGON was acting under color of District law within the scope of her employment at the Metropolitan Police Department.  OFC. VENE LAGON is sued in her individual capacity.

7.     Defendant OFC. ANDRES SILVA is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, OFC. ANDRES SILVA was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  OFC. ANDRES SILVA is sued in his individual capacity.

8.     Defendant OFC. MICHAEL MENTZER is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, OFC. MICHAEL MENTZER was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  OFC. MICHAEL MENTZER is sued in his individual capacity.

9.     Defendant OFC. OSCAR GARIBAY is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, OFC. OSCAR GARIBAY was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  OFC. OSCAR GARIBAY is sued in his individual capacity.

10.     Defendant OFC. STEPHEN FRANCHAK is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department.  At all times relevant to this Complaint, OFC. STEPHEN FRANCHAK was acting under color of District law within the scope of his employment at the Metropolitan Police Department.  OFC. STEPHEN FRANCHAK is sued in his individual capacity.

11.     Defendant SGT. STEVE URPS is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, SGT. STEVE URPS was acting under color of District law within the scope of his employment at the Metropolitan Police Department. SGT. STEVE URPS is sued in his individual capacity.

12.     Defendant OFC. TYRONE FREEMAN a/k/a TYRONE EVANS-FREEMAN is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, OFC. TYRONE FREEMAN was acting under color of District law within the scope of his employment at the Metropolitan Police Department. OFC. TYRONE FREEMAN is sued in his individual capacity.

13.     Defendant CAPT. ROBERT HALBLEIB is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, CAPT. ROBERT HALBLEIB was acting under color of District law within the scope of his employment at the Metropolitan Police Department. CAPT. ROBERT HALBLEIB is sued in his individual capacity.

14.     Defendant LT. PAUL NIEPLING is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, LT. PAUL NIEPLING was acting under color of District law within the scope of his employment at the Metropolitan Police Department. LT. PAUL NIEPLING is sued in his individual capacity.

15.     Defendant SGT. JOHNNIE WALTER is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, SGT. JOHNNIE WALTER was acting under color of District law

within the scope of his employment at the Metropolitan Police Department. SGT. JOHNNIE WALTER is sued in his individual capacity.

16.     Defendant LT. LARRY SCOTT is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, LT. LARRY SCOTT was acting under color of District law within the scope of his employment at the Metropolitan Police Department. LT. LARRY SCOTT is sued in his individual capacity.

17.     Defendant LT. JAMES MCCOY is and was, at all times relevant to this Complaint, employed by the Metropolitan Police Department. At all times relevant to this Complaint, LT. JAMES MCCOY was acting under color of District law within the scope of his employment at the Metropolitan Police Department. LT. JAMES MCCOY is sued in his individual capacity.

18.     Defendants SGT. JAMES SCHAEFER, OFC. WEN AI, OFC. ROBERT WELLS, OFC. VENE LAGON, OFC. ANDRES SILVA, OFC. MICHAEL MENTZER, OFC. OSCAR GARIBAY, OFC. STEPHEN FRANCHAK, SGT. STEVE URPS, OFC. TYRONE FREEMAN, LT. PAUL NIEPLING, CAPT. ROBERT HALBLEIB, SGT. JOHNNIE WALTER, LT. LARRY SCOTT, and LT. JAMES MCCOY are referred to collectively herein as the "Individual Officers."

## JURISDICTION AND VENUE

19.     This action arises under the District of Columbia common law, 42 USC § 1983, and 28 USC § 2201.

20.     This Court has jurisdiction over the parties pursuant to D.C. Code §§ 13-423(a)(3).

21.     This Court has jurisdiction over the subject matter pursuant to 28 USC §§ 1331 and 1367(a).

22.     Venue is proper in this district pursuant to 28 USC § 1391(b)(2) because the events or omissions giving rise to this action occurred in the District of Columbia.


STATEMENT OF FACTS

*A "Sleepful" Protest*

23.     Plaintiffs are members of Occupy DC, which is part of the larger Occupy movement.

24.     The Occupy Movement is a people-initiated movement that commenced with Occupy Wall Street in Zucotti Park, now called Liberty Square, in Manhattan's Financial District in New York City on September 17, 2011.  At its peak, Occupy had spread to hundreds of cities, towns and states in the United States and to more than 1500 locations worldwide.  The movement seeks to expose how the wealthiest 1% of society are promulgating an unfair global economy that is harming people, and destroying communities worldwide.

25.     A key purpose of the Occupy Movement is to raise awareness about the abuse of power and lack of accountability on the part of large financial institutions.

26.     On or about April 4, 2012, members of Occupy DC began daily protests in front of Bank of America.

27.     Occupy DC, along with the entire Occupy movement, seeks to begin an ongoing discussion about reforming banking and financial institutions and removing special interests from government.

28.     The location in front of Bank of America's offices is also fundamental to Plaintiffs' message.  Locating the demonstration there communicates a message about the object of their protest, and that message could not be communicated as effectively in another location.  Plaintiffs have a right to assemble near the object of their protest so that they may be seen and heard.

29.     Plaintiffs believed, and expressed through their signs, that Bank of America was unfairly foreclosing on people's homes and refusing to give loan modifications.

30.     The protest outside Bank of America came to be called a "sleepful protest" by many Occupy members. Some of the protesters brought sleeping bags to the protest, expressing the symbolism that individuals who were being evicted from their homes by Bank of America had nowhere to go.  They sought to bring the problem of homelessness to Bank of America's "doorstep," so to speak.

31.     Numerous "sleepful protests" occurred in other cities both before and after the events described in this Complaint.

32.     Although this Complaint refers to the demonstration as a "sleepful protest," none of the Plaintiffs were sleeping or attempting to sleep at the time they were arrested.


*Sidewalk Widths*

33.     The western sidewalk of Vermont Avenue, N.W. between K Street and Thomas Circle, which includes the sidewalk in front of 1090 Vermont Ave., NW where the sleepful protest occurred, is approximately 40 feet wide.

34.     In the vicinity where the sleepful protesters had gathered, there are four diamond-shaped flower boxes in the middle of the sidewalk which are approximately 7'

on each side. There is also a larger triangular tree and flower box in the middle of the sidewalk near the intersection of Vermont Ave. and L St., NW.

35. The D.C. Department of Transportation Design and Engineering Manual (Apr. 200 ed.)(hereinafter "DDOT Manual"), § 29.4.1.1, notes that "Most persons will avoid the area less than . . . 18-30 in. from a building façade."

36. As to those sleepful protesters who were within an area less than 18-30 in. from the building façade, they were in an area where it was unlikely that pedestrians would travel even if the protesters had not been there, particularly in light of the large width of that particular sidewalk.

37. The DDOT Manual, § 29.4.1.1, states, "The minimum continuous and unobstructed clear width of a pedestrian access route should be 4 ft., exclusive of the width of the curb."

38. At all times relevant to this Complaint, the sleepful protesters were positioned in such a way that there was an unobstructed clear width for pedestrian access of at least 4 feet.

39. The DDOT Manual, § 29.12, states, "The minimum clear path around utility structures, street furniture, and other encroachments shall be 3 feet."

40. At all times relevant to this Complaint, the sleepful protesters were positioned in such a way that there was a clear path around the protesters and any encroachments of at least 3 feet.

41. The Americans with Disabilities Act Guidelines for Buildings and Facilities (as amended through Sep. 2002), § 4.3.3 prescribes, "The minimum clear width of an accessible route shall be 36 in."

42.     At all times relevant to this Complaint, the sleepful protesters were positioned in such a way that there was a clear width of an accessible route of at least 36 inches.

43.     The D.C. Department of Transportation Public Space Permits and Records Branch maintains a Designated Street Distribution (card file) for each street within the District of Columbia.

44.     The Designated Street Distribution file for Vermont Ave, N.W. lists a sidewalk width of 40' for the western sidewalk between K St. and Thomas Cir.

*The April 10, 2012 Arrests*

45.     On April 10, 2012, a group of participants, including Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS, were sitting on the sidewalk outside of a Bank of America branch at 1090 Vermont Ave., NW, Washington, DC as part of their sleepful protest.

46.     The protesters reasonably expected that less than fifty persons would participate and less than fifty persons in fact attended.  The assembly occurred on the sidewalk and not on a District street.

47.      The assembly took place solely on a public sidewalk and did not prevent pedestrians from using the sidewalk or crosswalks.

48.     While Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS were sitting in front of Bank of America along with other protesters, several MPD officers approached and one of them told the group that they had to move away from the building's windows because they were blocking the windows.

49.     The protesters, including Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS, said "OK, we'll move," and moved away from the windows to

another spot on the sidewalk, where they sat down again. Workers then began washing the windows.

50.    Another MPD officer told the protesters, including Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS, that if they did not leave they would be arrested.

51.    Plaintiff HARRIS NTABAKOS, confused by the conflicting orders, asked for clarification and was told that he needed to leave.

52.    After the workers finished washing the windows, Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS moved back to the original spot where they had been sitting.

53.    Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS at that time were sitting cross-legged next to each other, parallel and slightly in front of the outer wall



of the building.  They were taking up approximately 2.5' of the approximately 40' width of the sidewalk:

54.     They were holding cardboard signs, or had such signs leaning against them, on which political messages were written.

55.     Plaintiff HARRIS NTABAKOS's sign read "Bank ~~of~~ rupt America."

56.     Plaintiff RODOLFO ROBERTS' sign read "The ATM fee you just paid could have fed a hungry child a meal."

57.     Defendant LT. LARRY SCOTT ordered the group, including Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS, to leave or be arrested.

58.     Some of the protesters stood up, leaving Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS as the only protesters remaining.

59.     Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS were not blocking or incommoding any passersby or violating any other law.  They were not in any way loud or disorderly and their failure to obey the MPD officer's order that they leave was justified by the fact that the order was unconstitutional.

60.     Defendant SGT. STEVE URPS ordered Defendants OFC. ROBERT WELLS and OFC. TYRONE FREEMAN to arrest Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS.

61.     On information and belief, Defendant SGT. STEVE URPS was the supervisor at the scene, although he was not necessarily the highest ranking officer present.

62.     Defendant OFC. ROBERT WELLS arrested Plaintiff HARRIS NTABAKOS.

63.     Defendant OFC. TYRONE FREEMAN arrested Plaintiff RODOLFO
ROBERTS.

64.     Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS were
transported to the MPD's Second District Station where they were released with citations
to appear in D.C. Superior Court on April 26, 2012 on charges of Blocking Passage.

65.     The arrests of Plaintiffs HARRIS NTABAKOS and RODOLFO
ROBERTS on April 10, 2012 violated their constitutional rights, as well as their statutory
rights under the First Amendment Assemblies Act of 2004, D.C. Code § 5-331.01, *et
seq.*, and their rights under the District common law.

66.     Defendant SGT. STEVE URPS told a co-worker that he believed that
Defendant LT. LARRY SCOTT had made illegal lockups of Plaintiffs HARRIS
NTABAKOS and RODOLFO ROBERTS, but decided not to speak to a superior official
about his concerns.

*The April 11, 2012 Arrests*

67.     On April 11, 2012, a group of participants, including Plaintiffs TIMOTHY
PILAR, ANTONYA HUNTENBURG and BARRY KNIGHT were sitting on the
sidewalk outside of a Bank of America branch at 1090 Vermont Ave., NW, Washington,
DC as part of their sleepful protest.

68.     The protesters reasonably expected that less than fifty persons would
participate and less than fifty persons in fact attended.  The assembly occurred on the
sidewalk and not on a District street.

69.     The assembly took place solely on a public sidewalk and did not prevent
pedestrians from using the sidewalk or crosswalks.

70. At approximately 7:00 AM, Defendant SGT. JOHNNIE WALTER observed the sleepful protest participants sitting on the sidewalk outside of the Bank of America branch at 1090 Vermont Ave., NW, Washington, DC. Defendant SGT. JOHNNIE WALTER called or radioed to report his observation.

71. LT. PAUL NIEPLING and CAPT. ROBERT HALBLEIB then arrived on the scene and conferred about the situation.

72. On information and belief, Defendant LT. PAUL NIEPLING advised Defendant CAPT. ROBERT HALBLEIB that the protesters should be ordered to leave. Although Defendant CAPT. ROBERT HALBLEIB had a higher rank than Defendant LT. PAUL NIEPLING, on information and belief, he deferred to LT. PAUL NIEPLING's judgment because he was relatively new to working Special Operations Division and LT. PAUL NIEPLING was relatively experienced.

73. Defendant CAPT. ROBERT HALBLEIB was the watch commander during the incident with the sleepful protesters on April 11, 2012 and was responsible for ensuring that all of his subordinates acted in compliance with the law.

74. On information and belief, Defendant CAPT. ROBERT HALBLEIB instructed Defendant LT. LARRY SCOTT to order the protesters to leave, and if they did not, to have them arrested.

75. While Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG and BARRY KNIGHT were sitting in front of Bank of America, several MPD officers approached the group and one of the MPD officers told the group that they had to be moving and could not be stationary.

76. Plaintiff BARRY KNIGHT said the order was unlawful, he would not obey it, and that the protesters were not doing anything illegal.

77.     One of the protesters remarked to an MPD officer that what the plaintiffs were doing was not illegal.  The MPD officer responded, "We know it's not illegal."

78.     Defendant LT. LARRY SCOTT told TIMOTHY PILAR, ANTONYA HUNTENBURG, BARRY KNIGHT, and one other protester, that they were incommoding and that if they did not move they would be subject to arrest.  TIMOTHY PILAR, ANTONYA HUNTENBURG, and BARRY KNIGHT remained, but the other protester who had been sitting picked up his belongings and moved.

79.     After several minutes, LT. LARRY SCOTT gave a second warning to TIMOTHY PILAR, ANTONYA HUNTENBURG, and BARRY KNIGHT.

80.     One of the protesters announced to the MPD officers who were present that at a D.C. Council hearing on February 1, it had been clarified that the type of activity engaged in by the protesters is legal.

81.     After several more minutes, LT. LARRY SCOTT gave a third warning, informing the group that they were in violation of D.C. Code § 22-1307 and that if they did not move, they would be subject to arrest.

82.     On information and belief, Defendant LT. LARRY SCOTT then ordered Defendant SGT. STEVE URPS to select the officers who would be arresting the sleepful protesters.

83.     SGT. STEVE URPS designated Ofc. Matthew Brinkley and Defendants OFC. MICHAEL MENTZER and OFC. STEPHEN FRANCHAK to be arresting officers.

84.     When Defendant OFC. STEPHEN FRANCHAK or the other individuals designated as arresting officers questioned what they were being asked to do, they were told just to follow the orders given.

85.     LT. LARRY SCOTT then announced that the group was under arrest and ordered the arrest of Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG, and BARRY KNIGHT.

86.     Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG, and BARRY KNIGHT were not blocking or incommoding any passersby or violating any other law. They were not in any way loud or disorderly and their failure to obey LT. LARRY SCOTT'S orders that they leave was justified by the fact that the order was unconstitutional.

87.     Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG, and BARRY KNIGHT were sitting cross-legged on the sidewalk beside a flower box such that they would be out of the way of pedestrians:



88.     Defendant OFC. STEPHEN FRANCHAK arrested Plaintiff TIMOTHY PILAR.

89.     Defendant OFC. MICHAEL MENTZER arrested Plaintiff BARRY KNIGHT.

90.     Ofc. Matthew Brinkley arrested Plaintiff ANTONYA HUNTENBURG.

91.     Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG and BARRY KNIGHT were transported to the MPD's Second District Station where they were released with citations to appear in D.C. Superior Court on May 2, 2012 on charges of Blocking Passage.

92.     The arrests of Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG and BARRY KNIGHT on April 11, 2012 violated their constitutional rights, as well as their statutory rights under the First Amendment Assemblies Act of 2004, D.C. Code § 5-331.01, *et seq.*, and their rights under the District common law.

93.     Defendant SGT. STEVE URPS told the arresting officers that Defendant SGT. JOHNNIE WALTER would provide them with a narrative to copy into their police report.

94.     When Defendant OFC. STEPHEN FRANCHAK got up from the computer where he was typing up his narrative, Defendant SGT. JOHNNIE WALTER sat down and edited the narrative to falsely state that the arrestees had been blocking the entrance to the bank.

95.     When OFC. STEPHEN FRANCHAK returned, he rewrote the narrative to delete the erroneous statement.

*The April 12, 2012 Arrests*

16

96.     On April 12, 2012, a group of participants, including Plaintiff JUSTINE MARK and Jacob Speirs were gathered on the sidewalk outside of a Bank of America branch at 1090 Vermont Ave., NW, Washington, DC as part of their sleepful protest.

97.     The protesters reasonably expected that less than fifty persons would participate and less than fifty persons in fact attended.  The assembly occurred on the sidewalk and not on a District street.

98.     The assembly took place solely on a public sidewalk and did not prevent pedestrians from using the sidewalk or crosswalks.

99.     While Plaintiff JUSTINE MARK and Jacob Speirs were sitting in front of Bank of America, Defendant LT. JAMES MCCOY asked the two of them if they wanted to be arrested.

100.     Plaintiff JUSTINE MARK responded that if she wanted to be arrested she would do something illegal, but that the last time she checked, she was allowed to sit with a sign on the sidewalk in America.

101.     Defendant LT. JAMES MCCOY said to Plaintiff JUSTINE MARK that if she did not want to be arrested, she should get up.

102.     Plaintiff JUSTINE MARK said to Defendant LT. JAMES MCCOY that the order was illegal and that she was not going to get up.

103.     Defendant LT. JAMES MCCOY gave three warnings to Plaintiff JUSTINE MARK and Jacob Speirs.  In the warnings, Defendant LT. JAMES MCCOY stated, "This is Lieutenant McCoy of the MPD Special Operations Division.  You are in violation of D.C. Code 1307, Blocking Passage.  If you do not cease your unlawful behavior and disperse peacefully, you will be arrested."

104.     Plaintiff JUSTINE MARK and Jacob Speirs were not blocking or incommoding any passersby or violating any other law.  They were not in any way loud

or disorderly and their failure to obey the MPD officer's order that they leave was justified by the fact that the order was unconstitutional.

105. Plaintiff JUSTINE MARK and Jacob Speirs at that time were sitting cross-legged next to each other, parallel and immediately next to the outer wall of the building. They were taking up approximately 2.5' of the approximately 40' width of the sidewalk:



106.     They were holding cardboard signs, or had such signs leaning against them, on which political messages were written.

107.     Plaintiff JUSTINE MARK's sign read "Banking institutions are more dangerous to our liberties than standing armies – Thomas Jefferson."

108.     Jacob Speirs' sign read "The ATM fee you just paid could have fed a hungry child a meal."

109.     Defendant OFC. ANDRES SILVA arrested Plaintiff JUSTINE MARK.

110.     Officer Luckett arrested Jacob Speirs.

111.     Plaintiff JUSTINE MARK and Jacob Speirs were transported to the MPD's Second District Station where they were released with citations to appear in D.C. Superior Court on May 2, 2012 on charges of Blocking Passage.

112.     The arrest of Plaintiff JUSTINE MARK on April 12, 2012 violated her constitutional rights, as well as her statutory rights under the First Amendment Assemblies Act of 2004, D.C. Code § 5-331.01, *et seq.*, and their rights under the District common law.

*The April 13, 2012 Arrests*

113.     On April 13, 2012, a group of participants, including Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR., was sitting on the sidewalk outside of a Bank of America branch at 1090 Vermont Ave., NW, Washington, DC as part of their sleepful protest.

114.     The protesters reasonably expected that less than fifty persons would participate and less than fifty persons in fact attended.  The assembly occurred on the sidewalk and not on a District street.

115.     The assembly took place solely on a public sidewalk and did not prevent pedestrians from using the sidewalk or crosswalks.

116.     Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR. were sitting in a row parallel and immediately next to the outer wall of the building.  They were taking up approximately 2.5' of the approximately 40' width of the sidewalk:



117.     They were holding cardboard or posterboard signs, or had such signs leaning against them, on which political messages were written.

118.     Plaintiff BRIAN EISTER's sign read, "There are more vacant homes than there are homeless people."

119.     Plaintiff MARSHALL SCOTT's sign read, "Can you see how tired I am of capitalism?"

120.     Plaintiff SAMUEL JEWLER's sign read, "This is a protest."

121.     Plaintiff BRENNAN MCFARLANE, JR.'s sign read, "America this is your intervention."

122.     Plaintiff TRACEY JOHNSTONE's sign simply had the letter "A" with a circle around it, a well-known symbol of anarchy.

123.     While Plaintiffs SAMUEL JEWLER, SCOTT MARSHALL, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR. were sitting in front of Bank of America along with other protesters, one MPD officer told the group that if they did not move they would be arrested for blocking passage.

124.     Several people in the group asked how they were blocking passage, and one or two of them noted that the police were blocking a portion of the sidewalk by standing around in a semicircle.

125.     In fact, the numerous police officers at the scene were taking up more of the sidewalk than the protesters.  Even with the presence of the police officers and protesters, there was ample room for pedestrians to walk down the sidewalk.

126.     An MPD officer gave three warnings.

127.     At the time the warnings were given, there were few, if any, pedestrians walking down the sidewalk.

128.     Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR. were not blocking or incommoding any passersby or violating any other law.  They were not in any way loud or disorderly and their failure to obey the MPD officer's order that they leave was justified by the fact that the order was unconstitutional.

129.     Defendant SGT. JAMES SCHAEFER arrested Plaintiff SAMUEL JEWLER.

130. Defendant OFC. WEN AI arrested Plaintiff MARSHALL SCOTT.

131. Defendant OFC. ROBERT WELLS arrested Plaintiff BRIAN EISTER.

132. Defendant OFC. VENE LAGON arrested Plaintiff TRACEY JOHNSTONE.

133. Defendant OFC. OSCAR GARIBAY arrested Plaintiff BRENNAN MCFARLANE, JR.

134. During the arrests, the protesters chanted "This is a legal protest."

135. Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR. were transported to the MPD's Second District Station where they were released with citations to appear in D.C. Superior Court on May 2, 2012 on charges of Blocking Passage.

136. The arrests of Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, and BRENNAN MCFARLANE, JR. on April 13, 2012 violated their constitutional rights, as well as their statutory rights under the First Amendment Assemblies Act of 2004, D.C. Code § 5-331.01, *et seq.*, and their rights under the District common law.

*Dismissal of charges*

137. Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS appeared in D.C. Superior Court on April 10, 2012 where they were arraigned. Each of them was charged with one count of Blocking Passage and one count of Failure to Obey a Lawful Order.

138. On July 18, 2012, the date scheduled for their criminal trial, Plaintiffs HARRIS NTABAKOS and RODOLFO ROBERTS moved, through counsel, to dismiss

their cases for want of prosecution. Magistrate Judge Elizabeth Wingo granted the motion.

139.    Plaintiffs TIMOTHY PILAR, ANTONYA HUNTENBURG and BARRY KNIGHT appeared in D.C. Superior Court on May 2, 2012 and their cases were "no papered."

140.    Plaintiffs SAMUEL JEWLER, MARSHALL SCOTT, BRIAN EISTER, TRACEY JOHNSTONE, JUSTINE MARK, and BRENNAN MCFARLANE, JR. and Jacob Speirs appeared in D.C. Superior Court on May 3, 2012 and their cases were "no papered."


*Legislative History of the Statute*

141.    A 2003 report entitled, "Disorderly Conduct Arrests Made by Metropolitan Police Department Officers" described the Office of Police Complaint's extensive study of disorderly conduct arrests in the District and made policy recommendations that went to the Mayor and City Council. The report provided the District with constructive notice of widespread constitutional violations.

142.    In 2010, the Council for Court Excellence (CCE) issued a report entitled, "Revising the District of Columbia Disorderly Conduct Statutes: A Report and Proposed Legislation." The report noted that the then-existing statutes "may give too much discretion to police to determine what conduct is disorderly."

143.    The CCE report concluded that the then-existing law's prohibition on "crowding" was deemed to be too vague, and indicated that there was "agreement that the prohibition should not be framed so broadly that it can be used as an anti-loitering statute, which likely would be invalidated by the courts."

144.     The CCE report contained proposed legislation that prohibited "blocking" but not "incommoding," "obstructing" or "crowding."

145.     The D.C. Office of the Attorney General, MPD, and U.S. Attorney's Office dissented from the CCE proposed legislation, in part, because "'blocking' is likely to be construed more narrowly than 'crowding, obstructing, or incommoding.'" However, the dissenters still "recognize[d] that a law prohibiting crowding, obstructing, or incommoding the free use of sidewalks and entrances should not be used as a subterfuge for an unconstitutional loitering law."

146.     The D.C. Council subsequently took up consideration of the "Disorderly Conduct Amendment Act of 2010," Bill 18-425.  The Council received written testimony about this bill from Ann Marie Staudenmaier, a staff attorney at the Washington Legal Clinic for the Homeless, that police told "many" individuals to move along in situations which could not possibly be interpreted as incommoding.

147.     Despite the concerns raised by the CCE report and the Washington Legal Clinic for the Homeless, the Council enacted D.C. Code § 22-1307 with language that prohibits "crowd[ing], obstruct[ing], or incommod[ing]."

*History of Enforcement of the Statute*

148.     In 2011, Bill Hassay, Jr., a solo musician performing at the corner of Wisconsin and M St., NW, was threatened by an MPD police officer with arrest for blocking a sidewalk.  The officer told Mr. Hassay that "pedestrians need the full width" of the sidewalk.

149.     Following the incident involving Hassay, the ACLU pointed out to high-ranking officials at MPD Headquarters and Second District that the officer had misinterpreted the law.

150.     The incident involving Hassay and the communication from the ACLU put the District on notice that without proper training and supervision, officers could and would apply the statute in a way that violated citizens' rights.

151.     MPD decisionmakers considered the issue to be of sufficient importance that, after a presentation by ACLU attorney Fritz Mulhauser, a high-ranking official, Assistant MPD Chief Groomes, confirmed that the officer had misinterpreted the law and wrote in an email that for there to be an arrest, "the sidewalk must be blocked, not partially blocked, causing pedestrians to move into the roadway."

152.     On February 1, 2012, the D.C. Council, Committee on the Judiciary, held a hearing regarding the 2011 revisions to the disorderly conduct statute.  At the hearing, Mr. Mulhauser testified that the ACLU had received a complaint that an officer had threatened to arrest a musician for simply standing on a sidewalk (presumably referring to Hassay) and that they had also heard the same kind of problems reported by advocates for the homeless.  Mr. Mulhauser suggested that the statute be amended to make clear that "incommoding" means that an individual is entirely blocking the sidewalk.

153.     Mr. Mulhauser supplemented his oral testimony with written testimony, advising that the statute had been applied to homeless individuals in the Georgetown area in a similar manner to how it was used against the musician.

154.     Kelly O'Meara, Director of the Office of Strategic Change, MPD also testified at the February 1, 2012 hearing.  Ms. O'Meara testified that after the enactment of the changes to the District's disorderly conduct law, MPD developed a written directive explaining the law and an online training session that could be delivered to all members of the MPD.  All members were required to certify that they had reviewed the directive and taken and passed the online training.

155.     Councilmember Phil Mendelson asked Ms. O'Meara at the hearing whether it was worth conducting the online training again this year (referring to 2012). Ms. O'Meara stated she thought MPD needed to review, based on the feedback they were getting from the ACLU and the Office of Police Complaints, what information needed to be updated and changed.

156.     Ms. O'Meara explained that everyone could agree that what happened to the musician in Georgetown was not appropriate, but that it sounded like it was only one person and Chief Groomes had already addressed it with the officers in patrol.

157.     Councilmember Mendelson explained that disorderly conduct offenses can be easily misunderstood and suggested that training may be as important, or more important, than the clarity that the Council thought it brought to the law.  He pointed out that an intensive refresher training may be needed, not doing it once.  Councilmember Mendelson asked Ms. O'Meara to get back to him on what MPD will do on intensive refresher training and how often.

158.     When asked by Councilmember Mendelson about ACLU's proposed amendment to the disorderly conduct statute, Ms. O'Meara noted that the issue was discussed at length by the Council for Court Excellence and that the term "incommoding" was added to ensure the statute reached more than "full blocking," such as situations where an individual was controlling the entire space.

159.     MPD Special Order 92-9, issued in July 1992, entitled "Enforcement of the 'Incommoding' and 'Failure to Move On' Sections of D.C. Code §22-1107, 1121(2)," defines incommoding as "the complete and continuous blocking of a sidewalk or vehicle traffic lane, so that citizens are denied the use of a public passageway. Partial obstruction of a sidewalk that causes inconvenience, but does not prevent people from using the sidewalk is not incommoding."

160.     An attachment to the Special Order explains, "Incommoding requires the continued blocking of vehicle traffic lanes or the effective, complete blocking of sidewalks or doorways by three or more persons. If the incommoding or obstruction of any block, sidewalk, doorway, or street is to such an extent that citizens are denied the use of these public passageways, such incommoding constitutes a breach of the peace." The requirement of three or more persons has since been eliminated by the 2010 statutory revision.

161.     The attachment further explains, "It is not incommoding for persons to stand or gather on a sidewalk or street corner in such a way as to inconvenience others by causing them to have to walk around the group on the sidewalk or to say 'excuse me' in order to pass through."

162.     The "D.C. Criminal Code Handout - October 2005" from the Maurice T. Turner Jr. Institute of Police Science (the MPD Police Academy) defines "incommoding" as "the complete and continuous blocking of a sidewalk or vehicle traffic lane so that citizens are denied the use of a public passageway. Partial obstruction of a sidewalk that causes inconvenience, but does not prevent people from using the sidewalk is NOT incommoding."

163.     A PowerPoint presentation used for MPD in-service training, entitled "Disorderly Conduct In-Service 2007" contains a slide "Incommoding/Failure to Move On," which states, "Incommoding-continuous blocking of a sidewalk or vehicle traffic lane by 3 or more people." Another slide, captioned "Incommoding," states, "Note: Partial obstruction of a sidewalk that causes momentary inconvenience, but does not prevent people from using the sidewalk is NOT incommoding."

*Notice of claims*

164.     The appropriate and required notice of Plaintiffs' intent to sue the District was made by hand-delivering a copy of Plaintiffs' claims to the Mayor's designee, the Office of Risk Management, on October 5, 2012.

<u>COUNT I:</u>
<u>FALSE ARREST / FALSE IMPRISONMENT</u>
<u>(Defendants District of Columbia and Individual Officers)</u>

165.     This Count realleges and incorporates by reference each of the preceding paragraphs.

166.     Defendant OFC. ROBERT WELLS is liable to Plaintiff HARRIS NTABAKOS for arresting him without probable cause.

167.     Defendant OFC. TYRONE FREEMAN is liable to Plaintiff RODOLFO ROBERTS for arresting him without probable cause.

168.     Defendant OFC. STEPHEN FRANCHAK is liable to Plaintiff TIMOTHY PILAR for arresting him without probable cause.

169.     Defendant SGT. STEVE URPS is liable to Plaintiff ANTONYA HUNTENBURG for ordering Ofc. Matthew Brinkley to arrest her without probable cause.

170.     Defendant SGT. STEVE URPS is liable to Plaintiff HARRIS NTABAKOS for ordering Defendant OFC. ROBERT WELLS to arrest him without probable cause.

171.     Defendant SGT. STEVE URPS is liable to Plaintiff RODOLFO ROBERTS for ordering Defendant OFC. TYRONE FREEMAN to arrest him without probable cause.

172.     Defendant SGT. STEVE URPS is liable to Plaintiff ANTONYA HUNTENBURG for ordering Ofc. Matthew Brinkley to arrest her without probable cause.

173.     Defendant SGT. STEVE URPS is liable to Plaintiff ANTONYA HUNTENBURG for ordering Ofc. Matthew Brinkley to arrest her without probable cause.

174.     Defendant SGT. JAMES SCHAEFER is liable to Plaintiff SAMUEL JEWLER for arresting him without probable cause.

175.     Defendant OFC. WEN AI is liable to Plaintiff MARSHALL SCOTT for arresting him without probable cause.

176.     Defendant OFC. ROBERT WELLS is liable to Plaintiff BRIAN EISTER for arresting him without probable cause.

177.     Defendant OFC. VENE LAGON is liable to Plaintiff TRACEY JOHNSTONE for arresting her without probable cause.

178.     Defendant OFC. ANDRES SILVA is liable to Plaintiff JUSTINE MARK for arresting her without probable cause.

179.     Defendant LT. JAMES MCCOY is liable to Plaintiff JUSTINE MARK for ordering her arrest without probable cause.

180.     Defendant LT. LARRY SCOTT is liable to liable to Plaintiffs HARRIS NTABAKOS, RODOLFO ROBERTS, ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for ordering their arrest without probable cause.

181.     Defendant CAPT. ROBERT HALBLEIB is liable to liable to Plaintiffs ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for ordering their arrest without probable cause.

182.     Defendant OFC. MICHAEL MENTZER is liable to Plaintiff BARRY KNIGHT for arresting him without probable cause.

183.     Defendant OFC. OSCAR GARIBAY is liable to Plaintiff BRENNAN MCFARLANE, JR. for arresting him without probable cause.


## COUNT II:
### VIOLATION OF THE FIRST AMENDMENT (42 USC § 1983)
#### (Defendants Individual Officers)

184.     This Count realleges and incorporates by reference each of the preceding paragraphs.

185.     Defendant OFC. ROBERT WELLS is liable to Plaintiff HARRIS NTABAKOS for stopping him from continuing his protest, in violation of the First Amendment.

186.     Defendant OFC. TYRONE FREEMAN is liable to Plaintiff RODOLFO ROBERTS for stopping him from continuing his protest, in violation of the First Amendment.

187.     Defendant OFC. STEPHEN FRANCHAK is liable to Plaintiff TIMOTHY PILAR for stopping him from continuing his protest, in violation of the First Amendment.

188.     Defendant SGT. STEVE URPS is liable to Plaintiff ANTONYA HUNTENBURG for ordering Ofc. Matthew Brinkley to arrest her without probable cause, thereby stopping him from continuing his protest, in violation of the First Amendment.

189.     Defendant SGT. STEVE URPS is liable to Plaintiff TIMOTHY PILAR for ordering Defendant OFC. STEPHEN FRANCHEK to arrest him without probable

cause, thereby stopping him from continuing his protest, in violation of his First Amendment rights.

190.     Defendant SGT. STEVE URPS is liable to Plaintiff BARRY KNIGHT for ordering Defendant OFC. MICHAEL MENTZER to arrest him without probable cause, thereby stopping him from continuing his protest, in violation of his First Amendment rights.

191.     Defendant SGT. JAMES SCHAEFER is liable to Plaintiff SAMUEL JEWLER for stopping him from continuing his protest, in violation of the First Amendment.

192.     Defendant OFC. WEN AI is liable to Plaintiff MARSHALL SCOTT for stopping him from continuing his protest, in violation of the First Amendment..

193.     Defendant OFC. ROBERT WELLS is liable to Plaintiff BRIAN EISTER for stopping him from continuing his protest, in violation of the First Amendment..

194.     Defendant OFC. VENE LAGON is liable to Plaintiff TRACEY JOHNSTONE for stopping her from continuing her protest, in violation of the First Amendment..

195.     Defendant OFC. ANDRES SILVA is liable to Plaintiff JUSTINE MARK for stopping her from continuing her protest, in violation of the First Amendment..

196.     Defendant LT. JAMES MCCOY is liable to Plaintiff JUSTINE MARK for causing her to be arrested without probable cause, thereby stopping her from continuing her protest, in violation of the First Amendment.

197.     Defendant LT. JAMES MCCOY is also liable to Plaintiff JUSTINE MARK for issuing an unconstitutional order demanding that she disperse from her peaceful, lawful protest, in violation of her First Amendment rights.

198.    Defendant LT. LARRY SCOTT is liable to liable to Plaintiffs HARRIS NTABAKOS, RODOLFO ROBERTS, ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for stopping them from continuing their protest, in violation of the First Amendment..

199.    Defendant LT. LARRY SCOTT is also liable to Plaintiffs HARRIS NTABAKOS, RODOLFO ROBERTS, ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for issuing an unconstitutional order demanding that they disperse from their peaceful, lawful protest, in violation of their First Amendment rights.

200.    Defendant CAPT. ROBERT HALBLEIB is liable to liable to Plaintiffs ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for ordering their arrest without probable cause, thereby stopping them from continuing their protest, in violation of their First Amendment rights.

201.    Defendant OFC. MICHAEL MENTZER is liable to Plaintiff BARRY KNIGHT for arresting him without probable cause and in retaliation for his exercise of his First Amendment rights.

202.    Defendant OFC. OSCAR GARIBAY is liable to Plaintiff BRENNAN MCFARLANE, JR. for stopping him from continuing his protest, in violation of the First Amendment.

203.    Each of the Plaintiffs were arrested not for violating the Blocking Passage statute, but for demonstrating.

## COUNT III:
## VIOLATION OF THE FOURTH AMENDMENT (42 USC § 1983)
### (Defendants Individual Officers)

204.     This Count realleges and incorporates by reference each of the preceding paragraphs.

205.     Defendant OFC. ROBERT WELLS is liable to Plaintiff HARRIS NTABAKOS for arresting him without probable cause.

206.     Defendant OFC. TYRONE FREEMAN is liable to Plaintiff RODOLFO ROBERTS for arresting him without probable cause.

207.     Defendant OFC. STEPHEN FRANCHAK is liable to Plaintiff TIMOTHY PILAR for arresting him without probable cause.

208.     Defendant SGT. STEVE URPS is liable to Plaintiff ANTONYA HUNTENBURG for ordering Ofc. Matthew Brinkley to arrest her without probable cause.

209.     Defendant SGT. STEVE URPS is liable to Plaintiff TIMOTHY PILAR for ordering Defendant OFC. STEPHEN FRANCHEK to arrest him without probable cause.

210.     Defendant SGT. STEVE URPS is liable to Plaintiff BARRY KNIGHT for ordering Defendant OFC. MICHAEL MENTZER to arrest him without probable cause.

211.     Defendant SGT. JAMES SCHAEFER is liable to Plaintiff SAMUEL JEWLER for arresting him without probable cause.

212.     Defendant OFC. WEN AI is liable to Plaintiff MARSHALL SCOTT for arresting him without probable cause.

213.     Defendant OFC. ROBERT WELLS is liable to Plaintiff BRIAN EISTER for arresting him without probable cause.

214. Defendant OFC. VENE LAGON is liable to Plaintiff TRACEY JOHNSTONE for arresting her without probable cause.

215. Defendant OFC. ANDRES SILVA is liable to Plaintiff JUSTINE MARK for arresting her without probable cause.

216. Defendant OFC. MICHAEL MENTZER is liable to Plaintiff BARRY KNIGHT for arresting him without probable cause.

217. Defendant OFC. OSCAR GARIBAY is liable to Plaintiff BRENNAN MCFARLANE, JR. for arresting him without probable cause.

218. Defendant LT. JAMES MCCOY is liable to Plaintiff JUSTINE MARK for causing her to be arrested without probable cause.

219. Defendant LT. LARRY SCOTT is liable to liable to Plaintiffs HARRIS NTABAKOS, RODOLFO ROBERTS, ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for causing them to be arrested without probable cause.

220. Defendant CAPT. ROBERT HALBLEIB is liable to liable to Plaintiffs ANTONYA HUNTENBURG, BARRY KNIGHT, and TIMOTHY PILAR for ordering their arrest without probable cause.


## COUNT IV:
## MUNICIPAL LIABILITY UNDER 42 USC § 1983 FOR VIOLATION OF THE FIRST AMENDMENT
### (Defendant District of Columbia)

221. This Count realleges and incorporates by reference each of the preceding paragraphs.

222. Defendant DISTRICT OF COLUMBIA made and enforced the Blocking Passage law, which is unconstitutional as applied to Plaintiffs' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:


(1) Declare Defendants' conduct to be unlawful;

(2) Order the destruction of all records of Plaintiffs' illegal arrests;

(3) Award Plaintiffs compensatory and punitive damages in an amount to be
determined at trial, except that Plaintiffs do not seek punitive damages against
Defendant DISTRICT OF COLUMBIA;

(4) Grant Plaintiff an award of attorney fees and other litigation costs reasonably
incurred in this action;

(5) Grant Plaintiff such other and further relief which the Court deems proper.


## JURY TRIAL

Plaintiff demands a jury trial for all issues that may be tried by jury.



Respectfully Submitted,


＿＿/s/ Jeffrey Light＿＿＿＿＿＿＿＿

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey@LawOfficeOfJeffreyLight.com

*Counsel for Plaintiffs*